## Ex Parte Joe L. Earman.

## Opinion Filed March 15, 1923.

1. The constitution vests "the judicial power of the State" in designated tribunals and judges, and such tribunals and judicial officers are by the law protected from insult and interference, for the purpose of giving them their due weight and authority in performing their judicial functions in the interest of orderly government.

2. The courts and judges have under constitutional government inherent power by due course of law to appropriately punish by fine or imprisonment or otherwise, any conduct that in law constitutes an offence against the authority and dignity of a court or judicial officer in the performance of judicial functions. And appropriate punishment may be imposed by the court or judge whose authority or dignity has been unlawfully assailed.

3. A direct contempt is an insult committed in the presence of the court or of a judge when acting as such, or a resistance of or an interference with the lawful authority of the court or judge in his presence, or improper conduct so near to the court or judge acting judicially as to interrupt or hinder judicial proceedings.

4. An indirect or constructive contempt is an act done, not in the presence of a court or of the judge acting judicially, but at a distance under circumstances that reasonably tend to degrade the court or the judge as a judicial officer, or to obstruct, interrupt, prevent or embarrass the administration of justice by the court or judge.

5. A criminal contempt is conduct that is directed against the authority and dignity of a court or of a judge acting judicially, as in unlawfully assailing or discrediting the authority or dignity of the court or judge or in doing a duly forbidden act.

6. A civil contempt consists in failing to do something ordered to be done by a court or judge in a civil case for the benefit of the opposing party therein.

7. When a court has adjudged an imprisonment for contempt of court, a superior court may in appropriate *habeas corpus* proceedings, test the validity of the imprisonment by determining whether the court that imposed the sentence of imprisonment had jurisdiction of the person, had authority to render such a sentence and had a proper predicate for its sentence in the charge and the proofs or admissions duly adduced before the sentence.

8. If a person is legally adjudged and imprisoned for contempt of court and the penalty imposed does not violate fundamental rights, he will not be discharged from such imprisonment on *habeas corpus;* but if the matters complained of in the contempt proceedings do not in law constitute contempt of court, an adjudication that they do constitute contempt does not make it contempt, and relief from imprisonment for matters not amounting to contempt may be had by *habeas corpus.*

9. The power of the court in *habeas corpus* proceedings to determine the validity of an imprisonment for contempt of court, is not to test divergent contentions as to the weight of the evidence adduced in proceedings to punish as for a criminal contempt of court, when the hearing of conflicting evidence is appropriate, but the functions of the court in *habeas corpus* is simply to consider the legal question whether the evidentiary facts found by the court in adjudging the contempt, had any reasonable tendency to sustain the action taken based upon the finding by the court.

10. In contempt proceedings at common law "if the party can clear himself upon oath, he is discharged; but if perjured, may be prosecuted for the perjury."

11. In proceedings for alleged constructive contempts, except, perhaps, where they are to enforce a civil remedy, if the party charged fully answers all the charges against him, he shall be discharged.

.12.. In contempt proceedings for writing ·a letter to a judge rela-
tive to a case pending before the judge ,and for publishing the
letter to others with statements that ·reflect on the judge,
where the person so charged denies on oath making the state-
ments and denies an intent to reflect on the judge in writing
the letter or in showing it to others, and the letter is not
clearly contemptuous in its import, imprisonment. should not
be adjudged; but if perjury is committed in the denials made,
a prosecution therefor may be had in due course of law.

A case of original jurisdiction.

Petitioner discharged.

*J. B. Hodges, Frank A. Pettibone* and *Sydney H. Dia-
mond,* for Petitioner;

*Blackwell, Donnell* & *McCracken, H. J. Quincey, C. E.
Chillingworth, Edgar C. Thompson, George W. Coleman,
Bert Winters, D. L. Southard, Ray Griffin, Roebuck* &
*Roebuck, John Ziegler, James O. Watson, L. R. Baker,
Sidney J. Catts, Jr., C. D. Abbott, and C. L. McCoy,* for
Respondent.

## STATEMENT.

In a petition for a writ of *habeas corpus* filed in this
court it is alleged that the petitioner is illegally deprived
of his liberty by the sheriff of Palm Beach County, Florida,
by virtue of a judgment and commitment in contempt pro-
ceedings before the Judge of the Fifteenth Judicial Cir-
cuit.

It appears that the Circuit Judge issued a rule ·against
Joe L. Earman setting forth "that Joe L. Earman, Judge
of the Municipal Court of the City of West Palm ·Beach,
Florida, did on the 25th day of January, A. D. 1923, at

which time there was pending in the said Circuit Court the case of Edwin Antelo, petitioner, against Leonard Bailey, Chief of Police of the City of West Palm Beach, defendant, the same being a petition for writ of *habeas corpus*, write to the Judge of the Fifteenth Judicial Circuit, a letter regarding said case of Antelo vs. Bailey, which letter was in the following words, to-wit:

> West Palm Beach, Florida,
> January 25, 1923.

" 'Hon. Edwin C. Davis, Judge,
    15th Judicial Circuit,
       West Palm Beach, Florida.

Dear Judge:

This letter is written for Your Honor's information, and as a communication from a judge of an inferior court to the judge of an appellate court.

"Edward Antoles was tried in the Municipal Court of West Palm Beach on January 20th on the charge of lewd and lascivious conduct with one Katie Powell.

"Sentence was deferred until Monday, January 22nd, and at the regular session of the court on that date he was sentenced to pay a fine of one hundred dollars and serve twenty days in jail at hard labor.

"The police department of West Palm Beach was very active last week, with result that many cases under the charge of lewd and lascivious conduct were presented for trial.

"Yesterday a writ of *habeas corpus* was sued out before Your Honor and Edward Antoles was released on a nominal bond, and the hearing fixed for Monday, January 29th, which gave him liberty for five days.

"The ordinance under which Antoles was convicted has been attacked in this *habeas corpus* proceedings.

"The idea in this court's mind being that fairness and enforcement of law should be equally extended to all men, other violators who had been convicted for lewd and lascivious conduct were brought into court this morning.

"Edward Antoles for whom habeas corpus proceedings were instituted plead guilty.

"It seems that Antoles has influential friends who have signed his bond, and he also has funds to secure counsel.

"Antoles was sentenced on January 22nd.

"Tom Johnson, a carpenter employed on the El Verano Hotel also plead guilty to the charge of lewd and lascivious conduct with one Myrtis Hansen and was sentenced to pay a fine of seventy-five dollars and serve five days in jail.

"Johnson is without influential friends or funds.

"Circumstances, however, were not as revolting or disgusting when the fundamentals of decency are considered as was the violation by Antoles.

"I have ordered Johnson's release on a nominal bond for his appearance in my court, Tuesday, January 30th, for final disposition, as the Antoles *habeas corpus* proceeding is scheduled for a hearing before Your Honor at ten o'clock Monday morning, January 29th.

"Katie Powell, a negro woman of dissolute character, who has been before the courts of Palm Beach and West Palm Beach many times, was convicted under the charge of lewd and lascivious conduct with Edward Antoles.

"She plead guilty and pending the final decision in the Antoles' *habeas corpus* proceedings, I have ordered her release on a nominal bond for appearance in the municipal court Tuesday, January 30th.

:"Zene Russell implicated in this same case under the charge of visting a house of ill-fame is set for trial January 27th, and he is now at liberty under a cash bond for one hundred dollars.· ·

"This case will be continued until after the Antoles' *habeas corpus* proceeding has been disposed of.

· "Johnnie Williams, a negro without funds and unable to pay fine or secure legal counsel, was convicted January 22nd on the charge of lewd and lascivious conduct with Mamie Ford, to which he plead guilty and now serving out his sentence at the rate of one dollar per day, was also liberated on a nominal bond for his appearance in the municipal court on January 30th.

"Mamie Ford, a negress without funds to pay a fine or secure legal counsel, was also convicted on January 22nd under the charge of lewd and lascivious conduct with Johnnie Williams, to which she plead guilty.

"The sentences of Johnnie Williams and Mamie Ford are each to pay a fine of twenty-five dollars or twenty-five days in jail.

"Both have been released on nominal bonds pending final decision of the Antoles' habeas corpus proceeding.

"I took the position, Your Honor, that the law should apply equally to all men, and if Edward Antoles, self-confessed violator, as indicated by his plea of guilty, can obtain his freedom even for five days, others less fortunate who also plead guilty, but are unable through lack of funds to secure legal counsel, and are without influential friends, should have like consideration extended to them.

"As they are therefore unable to reach your court through lack of funds and as judge of the municipal court, I have attempted justice and fairness toward them.

"As will be observed, this communication is not a brief on law, but a statement of facts.

Respectfully submitted,

(Signed) JOE L. EARMAN,
Judge of the Municipal Court of West
Palm Beach, Florida'."

"Said letter was written by the said Joe L. Earman and was delivered to and read by the court while the case of Antelo vs. Bailey, aforesaid, was pending in the Circuit Court aforesaid undisposed of and before said case was heard on its merits and before the date set for the hearing thereof;" and that "in order that the said Joe L. Earman may be specifically advised as to wherein said letter was false and defamatory and wherein it had a tendency to impede, embarrass and obstruct the court in the due administration of justice and in order that he may be advised as to wherein the statements which he made at the time of the publication and exhibition of said letter was false and defamatory and therefore constituted contempt of this court, the following specifications are made:

"1.  In writing said letter as a whole, you, Joe L. Earman, dealt with a case which had already been passed upon by you as judge of the Municipal Court of the City of West Palm Beach and which you knew was pending upon a writ of *habeas corpus* before the judge of the Circuit Court of this county, and it is apparent from the language you use in said letter as a whole that said letter was intended by you as a reflection upon the court, or the judge thereof, and was written for the purpose of embarrassing him and influencing him in the disposition of said case.

"2.  It is apparent from reading said letter as a whole that by inference and inuendo at least you intend to charge that the court was induced to grant the writ of

*habeas corpus* in the case therein referred to by the influence and wealth of Antelo and his friends, and by implication to charge that the court was by these corrupt influences induced to grant said writ of *habeas corpus*.

"3. In publishing to John M. Lindsey and C. H. Summers said letter so written by you and mailed to the court you stated to them that the said Edwin Antelo was a member of an order known as the Knights of Columbus and that William A. Weihe who went upon the bond of said Antelo was likewise a member of said order known as the Knights of Clumbus and that the Knights of Columbus were behind Antelo in his effort to obtain freedom and were using their influence with the court to influence the court that by the influence so brought to bear the court was forced to grant the writ of *habeas corpus* upon the petition presented to him in said case. Said statements so made by you were known by you to be false, or could have been so known by your making the slightest inquiry, or investigation."

The rule was served and the respondent filed a motion to quash the rule, which motion was denied.

The respondent filed the following answer:

"1. Respondent admits that he wrote the letter set out in said order to show cause, but disclaims any intention that said letter was intended by him as a reflection upon the court, or upon the judge thereof; or that it was written for the purpose of embarrassing said judge or influencing him in the disposition of said cause entitled 'Edwin Antelo against Leonard Bailey,' but on the contrary, avers that said letter was written for the information of the judge of said Circuit Court.

"2. Respondent admits that he sent copies of said letter to several people in the City of West Palm Beach, Florida.

"3.   Respondent denies that he exhibited also copies of said letter to various people and read the same to them and stated to them that Davis had granted a writ of *habeas corpus* to Edwin Antelo because of corrupt influences brought to bear upon him, the said Judge Davis.   And further, respondent denies that he made the statement to any one that Judge Davis had granted a writ of *habeas corpus* to Edwin Anteloe because of corrupt influences brought to bear upon him the said judge.

"4.   Respondent denies that he stated at the time of exhibiting said letter to the parties referred to in said order that he stated to said parties that if Davis upon hearing said writ of *habeas corpus* then pending before him in this court, released Edwin Antelo, that he, the respondent, would see to it that Davis was defeated for judge of the District Court of the United States for the Southern District of Florida, a position for which the said Davis was then an applicant, and respondent further denies that he stated to any one that if said Judge Davis, upon hearing said writ of *habeas corpus released* Edwin Antelo, the petitioner, that respondent would see to it that said Davis was defeated for judge of the District Court of the United States for the Southern District of Florida.

"5.   Said respondent denies that the language of said letter has a tendency to impede, embarrass or obstruct the court in the due administration of justice, or that it contains false or defamatory reflections upon the judicial integrity of the court; and respondent further denies that it was intended by him to impede, embarrass, or obstruct the court in the administration of justice in the cause then pending undisposed of before the court, or that said letter contains false or defamatory statements regarding the court.

"6. Respondent' denies that by or in said letter he intended to imply that the court was induced to grant the writ of *habeas corpus* by the wealth of Antelo or his friends, or that he charged in any way that the court was by that corrupt influence induced to grant said writ of *habeas corups*.

"7. Respondent denies that in publishing said letter to John M. Lindsay and C. H. Summers that he stated to them or either of them, that said Edward Antelo was a member of the order known as Knights of Columbus or that William A. Weihe, who went upon the bond of said Antelo, was likewise a member of said order, or that the Knights of Columbus were behind Antelo in his effort to obtain freedom, or that they were using their influence with the court to influence the court, or that by the influence so brought to bear upon the court, it was forced to grant the writ of *habeas corpus* upon the petition presented to the court in said cause.

"8. Further answering said rule or order to show cause respondent alleges that the said Circuit Court of the Fifteenth Judicial Circuit of the State of Florida was not in session in a term thereof during any of the times mentioned in said rule or order to show cause or at the time of the issuance of said order, but on the contrary, that said court was in vacation during all of said times, and respondent avers that on Saturday, November 11, A. D. 1922, the Special Fall Term of said Circuit Court was adjourned without date, and that said Circuit Court has not been in session from said time up to now."

At the hearing the Circuit Judge rendered the following:

## "ORDER

"This cause coming on to be heard before this court, upon a rule *nisi* duly served upon the respondent Joe L. Earman, and he appearing in court in person and with his counsel, Frank A. Pettibone, Esq., and James B. Hodges, Esq., and the respondent together with his counsel being in court during a full hearing of this matter and during the entering and reading to the respondent of this judgment and finding of this court; and the court having heard the testimony in the matter, and having read the answer or return filed by the respondent, and being fully advised in the premises:

"THE COURT FINDS, ORDERS AND ADJUDGES That the allegations set forth in the rule *nisi* filed in this cause and issued by this court, have been proved and substantiated by the evidence and admitted by the respondent.

"It is further found, ordered and adjudged that this court was not, at the time of the writing and publishing or circulating of the said letter set forth and alleged in the rule *nisi*, in vacation, but was in session, and it was during term time, as appears by the records of this court, of which this court takes judicial cognizance.

"And the court further finds, orders and adjudges that the case of Edwin Antelo vs. Leonard Bailey, Chief of Police of West Palm Beach, at the time of writing and publishing of the said letter, and at the time of making embarrassing and insinuating and threatening remarks by the respondent, was before the court, and had not been decided and determined, and no final order had been issued and entered therein; that the final order in said cause was not entered until about two o'clock P. M. on the

sixth day of February, 1923; and at the time of the offense as alleged in the rule *nisi*, the court had the said cause under advisement, and the letter and threats and insinuations and words as set forth and alleged in the rule *nisi*, came to the attention of this court and did embarrass this court in determining the said cause of Antelo v. Bailey, and did interfere with and hinder and embarrass this court in arriving at a decision and final order in said cause.

"This court further finds, orders and adjudges that the said Joe L. Earman, respondent, is guilty of contempt against this court.

"R. C. Baker, sheriff of Palm Beach County, Florida, is ordered to take the said Joe L. Earman into his control and to confine him in the common jail of Palm Beach County, Florida, from one o'clock A. M. on the 7th day of February, A. D. 1923, until one o'clock P. M. on the 17th day of February, A. D. 1923; and when he has fully exercised and complied with the order of this court that he shall make his return to this court in this cause, and fail not.

"It is ordered and adjudged that Joe L. Earman, respondent in this cause, pay the costs of this proceeding.

"Done and ordered at West Palm Beach, Florida, this sixth day of February, A. D. 1923.

(Signed) E. C. DAVIS, Judge."

A writ of *habeas corpus* was on February 9th, 1923, issued from this court; and pending the determination of the matter respondent was permitted to secure his release from actual custody by the execution of a bond for $500.00 under Section 3571, Revised General Statutes of 1920. See 4 Ency. Pl. & Pr. 769.

The return made by the sheriff is in substantial accord with the allegations of the petition.

The petitioner filed a "reply or answer to the return," and the sheriff filed a motion to strike the "reply or answer."

It appears from a certified copy of the minutes of the court that the Circuit Court for Palm Beach County was in session on November 11, 1922. The statute requires a term of court in the Fifteenth Judicial Circuit to be held in Palm Beach County on the second Tuesday in September, and in St. Lucie County on the second Tuesday in November, and in Okeechobee County on the second Tuesday in December. The second Tuesday in November, 1922, came on November 14, 1922, and the second Tuesday in December, 1922, was December 12, 1922. A certified copy of the minutes shows that the Circuit Court for St. Lucie County was in session in St. Lucie County on November 14, 1922. A certified copy of the minutes of the Circuit Court for Palm Beach County shows this entry: "This the Fall Term of the Circuit Court of Palm Beach County, Florida, is adjourned *sine die* this Feb. 8th, A. D. 1923. E. C. Davis, Judge." When the Circuit Court convened in St. Lucie County on November 14, 1922, pursuant to the statute, the Fall Term of the same court in Palm Beach County which was in session on November 11, 1922, was necessarily at an end, even though the judge on February 8, 1923, signed an order that the Fall Term of the Circuit Court of Palm Beach County was adjourned on that day.

The petitioner moved for a discharge upon the following grounds:

"First, That the Circuit Court was without jurisdiction to enter the order, or judgment, charging this petitioner to be guilty of a contempt of court under the Rule set forth in the return.

"Second, That the acts and words set forth in the Rule against this petitioner do not constitute a contempt of court.

"Third, That the rule *nisi*, upon which the judgment or order is based, was not founded upon any motion or sworn affidavit.

"Fourth, That the Circuit Court was not in session in a term thereof at the time the alleged contempt was committed or at the time of the issuance of the rule or at the time the judgment order was made and entered."

The statutes of the State contain the following:

"Every court shall have power to punish contempt against it, but the punishment imposed by a justice of the peace shall not exceed twenty dollars' fine or twenty-four hours imprisonment." Sec. 2534, Rev. Gen. Stats., 1920.

"A refusal to obey any legal order, mandate or decree, made or given by any judge either in term time or in vacation relative to any of the business of said court, after due notice thereof, shall be considered a contempt, and punished accordingly. But nothing said or written, or published, in vacation, to or of any judge, or of any decision made by a judge, shall in any case be construed to be a contempt." Sec. 2535, Rev. Gen. Stats., 1920.

"The judges of the several courts are hereby authorized and empowered to exercise in vacation any jurisdiction or power they are now authorized and empowered to exercise in term time; but when the exercise of such power shall require the intervention of a jury it shall not be exercised except in cases specially provided, unless all parties agree in writing to waive a jury.

"This section shall not be construed to require any judge to go out of the county in which he may be during vacation." Sec. 2531, Rev. Gen. Stats., 1920.

"1. *Generally.*—The return made to the writ may be amended, and shall not be taken to be conclusive as to the facts stated therein, but it shall be competent for the court, justice or judge before whom such return is made to examine into the cause of the imprisonment or detention, to receive evidence in contradiction of the return, and to determine the same as the very truth of the case shall require.

"2. *In Case of Contempt.*—When, on the return of the writ, the cause of detention shall appear to have been a contempt, plainly and specifically charged in the commitment by some court officer or body having authority to commit for contempt so charged and for the time stated, it shall be the duty of the court or judge before whom the writ is returnable forthwith to remand the prisoner, if the time for detention for contempt has not expired." Sec. 3575, Rev. Gen. Stats., 1920.

WHITFIELD, J.—(*After stating the facts.*)

On this writ of *habeas corpus* the real question presented is whether the Circuit Judge had authority to commit the petitioner here to imprisonment for contempt upon findings made upon allegations that the petitioner wrote a letter to the judge and published it to others and made statements about the judge as set forth in the statement filed with this opinion.

Under the statute quoted in the statement, if "the cause of detention shall appear to have been a contempt, plainly and specifically charged in the commitment by some court, officer or body *having authority to commit for the contempt so charged* and *for the time stated,* it shall be the duty of the court   *   to remand the prisoner if the time for detention for contempt has not expired."

The question to be determined is whether the Circuit Judge had "authority to commit for the contempt charged and for the time stated." If the judge had authority to adjudge imprisonment for the contempt charged and due process of law was observed in the proceedings and the imprisonment is authorized and not excessive, the petitioner should be remanded. If the conduct that is charged does not constitute a contempt for which the judge is authorized to adjudge imprisonment, an appropriate order should be made herein.

The Circuit Judge received the letter written to him by the Municipal Judge, therefore he had knowledge of it, and the charge as to the writing and sending of the letter needed no supporting affidavit. But obviously the Circuit Judge had only information and no personal knowledge of the alleged publication of the letter to others, or of the statements alleged to have been made by the author of the letter to those to whom the letter was published; therefore the charges in the rule as to such matters of which the Circuit Judge had information but not personal knowledge, should under the circumstances have been supported by affidavits of those who had personal knowledge of the alleged facts. See 4 Blackstone's Com. p. 287; Ex Parte Duncan, 78 Tex. Crim. Rep. 447, 192 S. W. Rep. 313, and Notes; 13 C. J. 64.

But the motion to quash went to the rule as an entirety, not to separate portions of the rule which is process, if not as here used also a pleading. See Continental Nat. Building & Loan Ass'n v. Scott, 40 Fla. 386, 24 South. Rep. 473, as to appropriate procedure.

The Constitution vests "the judicial power of the State" in designated tribunals and judges, and such tribunals and judicial officers are by the law protected from insult

and interference, for the purpose of giving them their due weight and authority in performing their judicial functions in the interest of orderly government.

Respect for courts and judicial officers in the performance of their judicial functions or in matters that are incident to administering right and justice, naturally arises in the human mind from an appreciation of the delicacy and importance of the power exercised by courts and judges and by the becoming manner in which the functions are performed by those entrusted with the power.

An efficient, upright, painstaking and impartial judiciary, by its own inherent influence for good, necessarily deserves and should be spontaneously accorded respect and moral support by all persons. Experience teaches that as a rule the courts and judicial officers are respected and deferred to in approximate proportion to the propriety of judicial conduct and the efficiency of the performance of judicial functions. As a consequence, it is seldom that complaint is made of infractions by individuals of established or generally recognized rules of conduct towards courts and judges with reference to judicial functions. See People v. Stapleton, 18 Colo. 568, 35 Pac. Rep. 167, 23 L. R. A. 787.

But as all persons do not at all times appreciate or recognize their obligations of respect for the tribunals that are established by governmental authority to maintain right and justice in the various relations of human life, the courts and judges have under constitutional government inherent power by due course of law to appropriately punish by fine or imprisonment or othewise, any conduct that in law constitutes an offense against the authority and dignity of a court or judicial officer in the performance of judicial functions. And appropriate punishment may

be imposed by the court or judge whose authority or dignity has been unlawfully assailed. See In re Hayes, 72 Fla. 558, 73 South. Rep. 362.

An offense against the authority or the dignity of a court or of a judicial officer when acting judicially is called contempt of court, a species of criminal conduct. Contempts may be direct or indirect or constructive, or criminal or civil, according to their essential nature. Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. Rep. 492. Contempts of court are committed against courts and judicial officers who are vested with a portion of "the judicial power of the State," when judicial functions are interfered with or impunged by the contemptuous acts or conduct. A direct attempt is an insult committed in the presence of the court or of a judge when acting as such, or a resistance of or an interference with the lawful authority of the court or judge in his presence, or improper conduct so near to the court or judge acting judicially as to interrupt or hinder judicial proceedings. This species of contempt may be punished at once and summarily by the court that is offended, in order to maintain its authority and dignity, but the punishment must be appropriate to the offense and not excessive.

An indirect or constructive contempt is an act done, not in the presence of a court or of a judge acting judicially, but at a distance under circumstances that reasonably tend to degrade the court or the judge as a judicial officer, or to obstruct, interrupt, prevent or embarrass the administration of justice by the court or judge. See Ex parte McCown, 139 N. C. 95, 51 S. E. Rep. 967, 2 L. R. A. (N. S.) 603.

A criminal contempt is conduct that is directed against the authority and dignity of a court or of a judge acting

judicially in unlawfully assailing or discrediting the authority or dignity of the court or judge or in doing a duly forbidden act.

A civil contempt consists in failing to do something ordered to be done by a court or judge in a civil case for the benefit of the opposing party therein. 6 R. C. L. p. 490; 13 C. J. 5.

Contempts not commiteed in the presence of the court or judge acting judicially are usually prosecuted by means of appropriate procedure affording a proper hearing before an adjudication of contempt.

In a prosecution for a criminal contempt whether direct or indirect or constructive, the purpose is not to avenge a personal affront, but to appropriately punish for an assault or an aspersion upon the authority and dignity of the court or judge. The proceedings may be summary if predicated upon a sufficient charge and due course of law is observed and constitutional rights are not violated in the hearing, and the imposed penalty is appropriate to vindicate the authority and dignity of the court or judge and is not excessive or unlawful in its nature or extent.

When a court has adjudged an imprisonment for contempt of court, a superior court may in appropriate *habeas corpus* proceedings, test the validity of the imprisonment by determining whether the court that imposed the sentence of imprisonment had jurisdiction of the person, had authority to render such a sentence and had proper predicate for its sentence in the charge and the proofs or admission duly adduced before the sentence. See *Ex parte* Turner, 73 Fla. 360, 74 South. Rep. 314.

If a person is illegally adjudged and imprisoned for contempt of court and the penalty imposed does not vio-

late fundamental rights, he will not be discharged from such imprisonment on *habeas corpus* but if the matters complained of in the contempt proceedings do not in law constitute contempt of court, an adjudication that they do constitute contempt does not make it contempt, and relief from imprisonment for matters not amounting to contempt may be had by *habeas corpus*. *Ex parte* Senior, 37 Fla. 1, 19 South. Rep. 652.

The power of the court in *habeas corpus* proceedings to determine the validity of an imprisonment for contempt of court, is not to test divergent contentions as to the weight of the evidence adduced in proceedings to punish as for a criminal contempt of court, when the hearing of conflicting evidence is appropriate, but the function of the court in *habeas corpus* is simply to consider the legal question whether the evidentiary facts found by the court in adjudging the contempt, had any reasonable tendency to sustain the action taken based upon the finding by the court. The situation is controlled by the reasonable tendencies of the acts done and not by extreme or strained assumptions on the subject. The criterion is not the influence the conduct or acts complained of may have had upon the mind of the particular judge, but the true test is the reasonable tendency of the conduct or the acts done to improperly influence or to embarrass or hamper the judicial action of a court. Having regard for the powers of the court in contempt proceedings, as well as to the protection of society and to the honest and fair administration of justice and to the evils that flow from embarrassing or obstructing judicial processes, the contempt for which summary punishment may be imposed accrues alone from a reasonable tendency of the acts complained of to degrade the court or to embarrass or obstruct judicial action, without reference to the consideration of how far

the acts may have had improper influence in a particular case.   Toledo Newspaper Co. v. United States, 247 U. S. 402, 38 Sup. Ct. Rep. 560.

Adverse comment or manifestations of personal disrespect not made or published in the presence of or so near to the court or judge and with reference to his judicial functions as to embarrass or hinder or discredit judicial action to be taken by such court or judge, may not be contempt for which summary punishment by imprisonment may be inflicted.

Punishment for contempt of court is allowed to be imposed, not to satisfy an offended judge, but to vindicate the authority and dignity of the judicial office; and the penalty should have reference to the nature and enormity of the act complained of and to the wrong done to the court.

In the provision of Section 2535, Revised General Statutes, 1920, that "nothing said or written, or published in vacation, to or of any judge, or of any decision made by a judge, shall in any case be construed to be a contempt," the term "in vacation" has the meaning of the common law which is "That period of time between the end of one term of court and the beginning of another."   Black's Law Dict. 6; Jacob's Law Dict. 323.   See Von Schmidt v. Widder, 99 Cal. 511, 34 Pac. Rep. 109; Conkling v. Ridgely Co., 112 Ill. 36; Brayman v. Whitcomb, 134 Mass. 525.   Where under the statutes a case may be heard and decided between terms of the court, the court may be regarded as in session for that case when it is being presented, or heard or decided; and the analogies of common law vacations between terms of court may be applied when the judge is not hearing or considering a case between terms of court.   It is not necessary to discuss the con-

stitutionality of the latter half of section 2535, Revised General Statutes of 1920, or to determine the extent if any that it has been modified by Section 2531, Revised General Statutes of 1920.

In this case it does not appear that the Circuit Judge was actually engaged in hearing or considering the case referred to in the proceedings; but it is clear that though the letter was received by the judge, the other acts complained of were not done in the presence of the judge or so near as to interrupt judicial proceedings, and it is also clear that the letter and the acts complained of could not reasonably have tended to embarrass the judge in his judicial functions.

The letter purports to be "a communication from a judge of an inferior court to the judge of an appellate court," and referring to a conviction in the case of Edward Antoles, says a writ of *habeas corpus* had been taken to review the conviction in the Municipal Court of Antoles who was released on bond by the Circuit Judge, and states that "it seems that Antoles had influential friends who have signed his bond, and he also has funds to secure counsel." Reference is made to other persons without funds who were convicted in the Municipal Court for like offenses and it is stated that sentence in such cases will be deferred until the Antoles case is disposed of on *habeas corpus* by the Circuit Judge and that "I took the position, Your Honor, that the law should apply equally to all men, and if Edward Antoles, self-confessed violator, as indicated by his plea of guilty, can obtain his freedom even for five days, others less fortunate who also plead guilty, but are unable through lack of funds to secure legal counsel, and are without influential friends, should have like consideration extended to them. As they are therefore unable to

reach your court through lack of .funds and as judge of the Municipal Court, I have attempted justice and fairness towards them.  As will be observed, this communication is not a brief on law, but a statement of facts.''

This letter does not clearly reflect upon the Circuit Judge, but it is perhaps a mistaken effort to give the Circuit Judge ''a statement of facts'' illustrating the writer's desire to do justice in other cases that abide the result of a test case then before the Circuit Judge.

In his sworn answer the writer of the letter ''denies that by or in said letter he intended to imply that the court was induced to grant the writ of *habeas corpus* by the wealth of Antelo or his friends, or that he charged in any way that the court was by that corrupt influence induced to grant said writ of *habeas corpus*.''

In 4 Blackstone's Commentaries, page 287, referring to the common law procedure in contempt cases, it is said ''if the party can clear himself upon oath, he is discharged.'' As the letter is not clearly contemptuous, the oath of the respondent denying the allegations was entitled to due weight in determining the appropriate order to be made in the premises.

One allegation in the rule is that the respondent stated to others to whom he is alleged to have published the letter he had written to the Circuit Judge, that ''the Knights of Columbus were behind Antoles in his effort to obtain freedom and were using their influence with the court to influence the court that by the influence so brought to bear the court was forced to grant the writ of *habeas corpus* upon the petition presented to him in said case.''  This allegation was not supported by the affidavit of any one having personal knowledge of the alleged fact, as the law requires.   4 Blackstone's Com., p. 286.

The respondent in his sworn answer denies that he exhibited copies of the letter to others and denies that he "stated to them that Davis had granted a writ of *habeas corpus* to Edward Antoles because of corrupt influence brought to bear upon him, the said Judge Davis."

In the order adjudicating the respondent to be "guilty of contempt of the court," the judge makes a finding that "the allegations set forth in the rule *nisi*  *  have been proved and substantiated by the evidence and admitted by the respondent." This is not finding that the respondent admitted to be true any one of the material specified charges contained in the rule that the respondent had denied in his sworn answer. The charge in this case and the findings are essentially from those in Savin, Petitioner, 131 U. S. 267, 9 Sup. Ct. Rep. 699.

At common law "if the party can clear himself upon oath, he is discharged, but, if perjured, may be prosecuted for the perjury." 4 Blackstone's Com. 287; In re Verdon, 89 N. J. L. 16, 97 Atl. Rep. 783.

In proceedings for alleged constructive contempts, except, perhaps, where they are to enforce a civil remedy, if the party charged fully answers all the charges against him, he shall be discharged, and the court cannot, after that hear evidence to impeach or contradict him. State v. Earl, 41 Ind. 464; In re Walker, 82 N. C. 95; Underwood's Case, 2 Humph. (Tenn.) 46.

It appears from the cited authorities that by the common law which is applicable here, when the respondent denied under oath the allegation contained in the rule *nisi* that he stated to others that the court was forced to grant the writ of *habeas corpus* to Antoles by influence brought to bear on the court by the Knights of Columbus, the re-

spondent should have been discharged.  If he violated his oath in denying the charge, the remedy was a criminal prosecution, not summary imprisonment as for a contempt from which he endeavored by oath to absolve himself.  4 Blackstone's Com. p. 287.

While it is apparent that an indiscretion was committed by the Municipal Judge, the petitioner here, in writing and sending the letter to the Circuit Judge who had appellate jurisdiction of the cases referred to in the letter; yet a perusal of the letter does not convey the impression that it was "intended as a reflection upon the court," as is charged in the rule.  Nor does it appear from the letter or by its publication to others that it "was written for the purpose of embarrassing and influencing" the judge "in the disposition of" the Antelo case specifically referred to.  And having regard for the ordinary firmness of character a Circuit Judge is supposed to have, the statements found to have been made by the petitioner to persons to whom petitioner exhibited the letter he had written to the Circuit Judge, though reflecting upon the judge they do not warrant imprisonment for contempt after the denials under oath even if such statements have a real tendency "to embarrass the court in the administration of justice" or "to influence the decision of the court in the case then pending."  This being so, the finding of the judge that "the letter and threats and insinuations and words as set forth and alleged in the rule *nisi*, came to the attention of this court and did embarrass this court in determining the said cause of Antelo v. Bailey, and did interfere with and hinder and embarrass this court in arriving at a decision and final order in said cause" does not as a matter of law support an adjudication of imprisonment for contempt of court, even though such acts did in fact affect the judge as he holds they did, the controling

11—Vol. 85.

considerations being the natural tendencies of the acts, and the course to be pursued upon denials under oath. 4 Blackstone's Com. 287; In re Verdon, 89 N. J. L. 16, 97 Atl. 783.

The acts found to have been committed in publishing the letter to others with the statements made, were not done in the presence of the judge, or so near to his presence or to judicial proceedings and under circumstances that could reasonably have affected the fortitude of the judicial mind or to have interferred with or hindered or embarrassed the judge in disposing of the case then pending before him. The judge did in fact dispose of the case in due course within his judicial authority. · This shows the judicial functions were not impeded. The adjudication of imprisonment as for a criminal contempt after the denial under oath of the charges as made was not authorized by the rules of the common law. This makes the detention illegal and a discharge from imprisonment may be had on *habeas corpus*.

The petitioner will be discharged.

TAYLOR, C .J,. BROWNE AND WEST, J. J., concur.

ELLIS, J., dissents.