PER CURIAM.
Phillip Wasserman appeals his conviction for indirect criminal contempt. We reverse because Mr. Wasserman’s conduct, while ill-mannered and reprehensible, does not constitute indirect criminal contempt as a matter of law.
The facts underlying the contempt adjudication are as follows. Mr. Wasserman, a lawyer, failed to appear at a court hearing before Judge John Lenderman in response to a subpoena issued to compel production of a file in Mr. Wasserman’s possession. Judge Lenderman instructed his judicial assistant, Cindy Decker, to prepare an order to show cause for Mr. Wasserman’s failure to appear.
About an hour after the hearing, Mr. Was-serman called the judge’s chambers and spoke to Ms. Decker, who informed him that the judge had directed that an order to show cause be issued. Mr. Wasserman became angry and asked to speak to Judge Lender-man. The judge was still in court and, when Ms. Decker sent him a message, he declined to speak to Mr. Wasserman ex parte. Ms. Decker testified that Mr. Wasserman began screaming at her, calling her a “little moth-erf-” and calling the judge a “moth-erf-son of a b-.” Mr. Wasserman, on the other hand, contended that either he used no obscenities or Ms. Decker hung up the phone before he used any foul language.
According to Judge Lenderman, when he returned to his chambers from the courtroom, Ms. Decker was visibly upset. She told him that Mr. Wasserman had been very abusive and that she needed to go home. The judge returned to his courtroom and presided over hearings until 5 p.m. or later. At approximately 6 p.m. that evening, the judge called Ms. Decker at home and asked her what Mr. Wasserman had said to her. Subsequently, Judge Lenderman issued a second order to show cause which included the contempt issue now on appeal.
The contempt hearing was presided over by a judge other than Judge Lenderman. At *848 the conclusion of the hearing, the trial court entered a judgment of indirect criminal contempt and sentenced Mr. Wasserman to serve 30 days in the county jail, the last 20 days to be suspended upon the condition that Mr. Wasserman attend and successfully complete a class on ethics as approved by the Florida Bar.
It is clear that the sole conduct which forms the basis of the contempt charge before us is Mr. Wassermaris utterance of vulgar comments made to a judicial assistant out of the presence of the trial judge. We must determine whether such utterances may be punished by indirect criminal contempt. In order to make this determination, we are called upon to examine the limitations imposed on the trial court’s contempt power by the First Amendment to the United States Constitution.[1] However, before we begin we emphasize that this opinion does not address the power of direct criminal contempt because the power of a court to punish for in-eourt contempts stands on a different footing than contempts occurring out of the presence of the court. It has long been recognized that “courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect and decorum in their presence, and submission to their lawful mandates.” Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 227, 5 L.Ed. 242, 247 (1821).
The test to be applied to determine whether an out-of-court statement is contemptuous is whether it constitutes a clear and present danger to the orderly administration of justice. Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962). The “clear and present danger” standard is defined in Bridges v. State of California, 314 U.S. 252, 263, 62 S.Ct. 190, 194, 86 L.Ed. 192 (1941), as “a working principle that the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished.” Its proper application is described in Craig v. Harney, 331 U.S. 367, 373-376, 67 S.Ct. 1249, 1253-1255, 91 L.Ed. 1546 (1947), wherein the Court explains that whether speech constitutes a clear and present danger is measured not by the content of the remark but by the impact on judicial action:
The history of the power to punish for contempt (see Nye v. United States, [313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941) ] supra; Bridges v. State of California, [314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941)] supra) and the unequivocal command of the First Amendment serve as constant reminders that freedom of speech and of the press should not be impaired through the exercise of that power, unless there is no doubt that the utterances in question are a serious and imminent threat to the administration of justice.
The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil.
Thus, it necessarily follows that a careful distinction must be made between communications which are merely personally offensive and those which pose an imminent threat of interference with the trial court’s business. Consequently, the identification of a statement as constituting a clear and present danger to the administration of justice can only be made after taking into account the setting in which the statement is made. This approach recognizes the purpose of the contempt power, which is to protect the proper administration of justice and not to satisfy an offended judge. Ex parte Earman, 85 Fla. 297, 95 So. 755 (1923).
Applying these principles to the case before us, we observe that the trial court did not apply the “clear and present danger” standard. Instead, the judgment of contempt is based on a finding that Mr. Wasser- *849 man’s comments “were intended to demean and degrade the dignity, authority and respect for the office of circuit judge.” The order does contain the additional finding that:
Mr. Wasserman’s conduct resulted in disrupting the conduct of the Court as presided over by Judge Linderman [sic] in that Ms. Decker became so upset and disturbed that she found it necessary to leave the office for the balance of the day with the consequent disruption of the affiars [sic] of the Court.
However, the trial court did not set forth any findings of fact that indicate how the conduct or affairs of the trial court were disrupted. We need not decide whether this conclusory finding of disruption meets the clear and present danger test because our review of the transcript discloses no evidence to support it. In fact, Judge Lenderman testified that the incident did not hinder the performance of any judicial functions. Because there is no evidence to support a finding that Mr. Wasserman’s statements constituted a clear and present danger to the orderly administration of justice, we hold that the power of indirect criminal contempt may not be used to punish their utterance.
We fully agree with the Florida Supreme Court’s conclusion that the right to free speech under the United States and Florida constitutions does not protect Mr. Wasserman from his much deserved disciplinary suspension from the practice of law in the State of Florida.[2] We, however, are not dealing with the area of disciplinary proceedings but instead with the narrow issue of criminal contempt. In this context we are bound by the restraints imposed by the First Amendment on the use of criminal contempt. Our reversal of the judgment of contempt should not be read as condoning Mr. Wasser-man’s conduct. Mr. Wasserman’s conduct, as determined by the trial court, was clearly unprofessional, disrespectful and totally without civility and common courtesy.
Reversed and remanded with directions to vacate the judgment of contempt,
FRANK, A.C.J., and PARKER and FULMER, JJ., concur.

. We do not address the arguments presented concerning whether the conduct comes within the statutory definition of contempt because we have recognized that, notwithstanding statutory limitations, our courts have inherent contempt power. See Walker v. Bentley, 660 So.2d 313 (Fla. 2d DCA 1995), review granted, 670 So.2d 941 (Fla.1996).

. The Florida Bar v. Wasserman, Nos. 83, 818, 83,438, 84,814, - So.2d - [1996 WL 122174] (Fla. Mar. 21, 1996).