CAMPBELL, MONTEREY, (Senior) Judge.
Linda Louise Kress challenges the trial court’s order finding her in direct criminal contempt and ordering her incarcerated. We reverse.
Shortly before 3:00 p.m., on the afternoon of March 7, 2000, Judge Nelson, in order to leave the building from his chambers on the fourth floor, was descending to the ground floor of the Lee County courthouse by way of the building’s elevator when he heard yelling, screaming, and swearing. He surmised that the noise was emanating from one of the hearing rooms on the fourth floor. However, when the elevator door opened on the third floor, he found that Kress was the source of all the commotion. When she joined Judge Nelson in the elevator compartment and continued her tirade, he asked her to desist. The judge stated that he did not appreciate her behavior in that he had been dealing with similar situations all day, and he really did not need to hear it from her as well, certainly not while trapped in an elevator with her.
Employing a vulgarity, Kress demanded to know who he was. He informed her that he was Judge Nelson, and according to the judge’s recollection, she told him to go “bite yourself.” This all occurred in the presence of a bailiff, a security guard, and a number of other unidentified people. Rather than employing other means at his disposal to quell Kress’s disturbing conduct, the judge had a bailiff take Kress into custody, ordered her jailed overnight, and conducted a contempt hearing the following day. Judge Nelson began the hearing the next day by telling Kress, “You just happened to get on the elevator with the wrong fellow.”
Kress denied telling Judge Nelson “to bite me,” explaining instead that “when I was leaving the building, I said bye, I yelled bye.” Judge Nelson responded, “My eyes might not be good, lady, but my ears are fíne.” Kress repeated her denial, added that she did not remember him telling her he was a judge, and finally stated: “I apologize, but that is not what I said.” Kress indicated that she was “very stressed out yesterday,” and that she had a “very bad day,” to which Judge Nelson responded, ‘Well, you had a worse night, Pm sure.” Judge Nelson said Kress’s explanation was “simply not credible,” and found her in direct criminal contempt and sentenced her to the time already served in county jail.
We reverse the trial court’s contempt order for the following reasons:
First, the judge was not acting in his official capacity as a judge when he witnessed Kress’s offensive behavior and had her detained. In addition, there was no evidence that Kress’s actions hindered or disrupted any judicial proceedings.
A direct contempt is an insult committed in the presence of the court or of a judge when acting as such, or a resistance of or an interference with the lawful authority of the court or judge in his presence, or improper conduct so near to the *1209 court or judge acting judicially as to interrupt or hinder judicial proceedings.
Ex parte Earman, 85 Fla. 297, 95 So. 755, 760 (1923). Here, the judge simply happened to run into the irate Kress on his way out of the courthouse. Kress had not appeared before him and claimed not to know that he was a judge.
In R.C. v. State, 648 So.2d 1258 (Fla. 3d DCA 1995), the Third District upheld the trial court’s finding that a juvenile’s kicking of a courtroom door while on his way to his delinquency hearing and making expletive comments to the bailiff constituted direct criminal contempt, even though the incident occurred technically outside the courtroom. However, that case is distinguishable from this one in that the conduct was directed at an officer of the court in the execution of his duty and was “clearly ‘calculated to lessen [the court’s] authority or its dignity.’ ” Id. at 1259 (quoting Ex parte Crews, 127 Fla. 381, 173 So. 275, 279 (1937)).
In the absence of any evidence of wilful or deliberate intent to disrupt, it should be rare that the mere use of a word or phrase which may have negative or distasteful connotations will be sufficient to constitute criminal contempt.
Murrell v. State, 595 So.2d 1049, 1051 (Fla. 4th DCA 1992). Although Judge Nelson may properly have been personally offended by Kress’s use of profanity, her outburst was not directed to the judge in his official capacity. Therefore, under those circumstances, the judge lacked the authority to hold Kress in criminal contempt.
Second, even if the circumstances did justify Judge Nelson finding Kress in direct criminal contempt, the court failed to follow the procedure set forth in Florida Rule of Criminal Procedure 3.830. Under that rule, “[pjrior to the adjudication of guilt,” and imposition of any sentence of incarceration, the trial court should have informed Kress of the accusation against her and inquired as to whether she had any cause why she should not be adjudicated and sentenced. Here, Kress was deprived of due process because she was forced to serve her sentence before ever receiving a hearing on the charge. See Bouie v. State, 784 So.2d 521 (Fla. 4th DCA 2001) (holding that the provisions of rule 3.830 must be scrupulously followed in criminal contempt proceedings).
For these reasons, we reverse the trial judge’s order finding Kress in direct criminal contempt.
FULMER, A.C.J., and STRINGER, J., Concur.