595 So.2d 1049 (1992)
Donnie MURRELL, Appellant,
v.
STATE of Florida, Appellee.
No. 91-1056.
District Court of Appeal of Florida, Fourth District.
March 11, 1992.
Michael Salnick of Salnick & Krischer, West Palm Beach, for appellant.
Robert Augustus Harper of Robert Augustus Harper Law Firm, P.A., Tallahassee, for amicus curiae Florida Ass'n of Crim. Defense Lawyers on behalf of appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Patricia A. Lampert, Asst. Atty. Gen., West Palm Beach, for appellee.
ANSTEAD, Judge.
The appellant, Donnie Murrell, an attorney who was appointed to represent a defendant in a criminal case, claims error by the trial court in adjudicating him guilty of direct criminal contempt for statements he made while arguing a motion to dismiss on behalf of his client. We agree and reverse.

FACTS
Murrell was appointed to represent a defendant who was caught in a reverse sting operation and charged with drug trafficking. Murrell claimed entrapment on behalf of his client, and sought a dismissal of the charges because of the use by the government of a convicted confidential informant who admitted his fear of imprisonment if he did not testify in support of the state's case. Murrell contended that the use of the informant in this manner violated the due process clause of the Florida Constitution. *1050 During his argument on the motion to dismiss, Murrell stated:
"It goes to the very integrity of the process and it is prostituting this Court's integrity to allow that to go on."
(Emphasis supplied). When questioned by the court, Murrell claimed that the language he used was from an appellate opinion, but he was unable to provide the court with a case citation. The court found Murrell to be in direct criminal contempt for the language, as emphasized above, used in his argument.

LAW
A judgment of contempt, like most other final decisions after trial, comes before us with a presumption of correctness. In Re Weinstein, 518 So.2d 1370, 1372 (Fla. 4th DCA 1988), citing, State ex rel. Garlovsky v. Eastmoore, 393 So.2d 567 (Fla. 5th DCA 1981); Krueger v. State, 351 So.2d 47 (Fla. 3d DCA 1977). The trial court's determinations should not be disregarded if they are supported by the law and some evidence in the record. In Re Weinstein, 518 So.2d at 1374, citing, Ward v. State, 354 So.2d 438 (Fla. 3d DCA 1978).
The law of contempt has been stated many ways. The supreme court has described criminal contempt as:
"... any act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice, or which is calculated to lessen its authority or its dignity ..."
Ex Parte Crews, 127 Fla. 381, 173 So. 275, 279 (1937). See also Sandstrom v. State, 309 So.2d 17 (Fla. 4th DCA 1975), cert. dismissed, 336 So.2d 572 (Fla. 1976). Contempt of court has also been defined as "[a]n offense against the authority or the dignity of a court or of a judicial officer." Ex Parte Earman, 85 Fla. 297, 95 So. 755 (1923). The major purpose of the law of contempt is to maintain and preserve the dignity of the judiciary and the orderly administration of justice. The standard to be applied in determining whether conduct is contemptuous is an objective one based upon a determination of the conduct's tendency to hinder the administration of justice, rather than a subjective one concerned with the sensitivities of a particular judge. Importantly, as noted above, the conduct alleged to be contemptuous must be calculated to cause harm.
On appeal Murrell contends that he believed in good faith that the language he used came from court opinions. He cites Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985), as using language similar to that he used in cautioning court scrutiny of the government's conduct when entrapment is alleged:
In recent years, however, this Court has fashioned a second, independent standard for assessing entrapment. It recognizes that when official conduct inducing crime is so egregious as to impugn the integrity of a court that permits a conviction, the predisposition of the defendant becomes irrelevant. .. .
Cruz, 465 So.2d at 521, (emphasis supplied), citing, State v. Molnar, 81 N.J. 475, 484, 410 A.2d 37, 41 (1980) (footnote omitted). Murrell asserts that this language in Cruz is not significantly different than his use of the word "prostituting" in urging the trial court not to sanction the government's conduct involved in the case being defended. We agree. In fact, we note that although not cited by Murrell at trial or on appeal, the Cruz opinion does contain the word "prostitution" in a quote from a concurring opinion of a United States Supreme Court justice:
While the objective view parallels a due process analysis, it is not founded on constitutional principles. The justices of the United States Supreme Court who have favored the objective view have found that the court must "protect itself and the government from such prostitution of the criminal law. The violation of the principles of justice by the entrapment of the unwary into crime should be dealt with by the court no matter by whom or at what stage of the proceedings the facts are brought to its attention." Sorrells [v. U.S.], 287 U.S. 435 at 457, 53 S.Ct. [210] at 218 [77 L.Ed. 413 (1932)] (Robert, J., in a separate opinion). *1051 Justice Frankfurter also found that a judge's decision using the objective view would offer significant guidance for future official conduct, while a jury verdict offers no such guidance. Sherman [v. U.S.], 356 U.S. [369] at 385, 78 S.Ct. [819] at 827 [2 L.Ed.2d 848 (1958)] (Frankfurter, J., concurring in the result).
Cruz, 465 So.2d at 520 n. 2 (emphasis supplied).
Recently, in a separate opinion in State v. Hunter, 586 So.2d 319, 323-324 (Fla. 1991), Justice Barkett expressed concerns similar to those expressed in Cruz:
Finally, I am deeply concerned with the complicity of the courts in this process. Diamond was convicted of drug offenses and sentenced to the minimum mandatory term of fifteen years' imprisonment in May 1982. However, the trial court allowed Diamond to stay on the streets to "make cases" for the state until Diamond finally snared Conklin and Hunter in mid-October 1982, after which the court reduced Diamond's sentence. The trial court had no authority to keep Diamond out of jail and reduce his lawful sentence five months after it imposed sentence. See Fla.R.Crim.P. 3.800(b) (a trial court may modify a legal sentence within sixty days after imposing sentence); see also § 893.135(2), Fla. Stat. (1981) ("with respect to any person who is found to have violated [drug trafficking laws], adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for parole prior to serving the minimum mandatory term of imprisonment prescribed by this section."). As Judge Anstead, writing for the court, observed, "Diamond was actually out of jail illegally at the time he induced Conklin to traffic in cocaine." Hunter v. State, 531 So.2d 239, 243 (Fla. 4th DCA 1988). Thus, we have allowed the abuse of "substantial assistance" to infect the courts themselves.
It would be neither logical nor constitutional for the legislature to spend our financial resources to create crime. A society that permits violation of the law as a means of convicting a lawbreaker is just as lawless as the individual it convicts. I cannot believe that the ends of law enforcement ever justify the means of lawbreaking.
Accordingly, I am persuaded that "substantial assistance," when used as in this case to force a defendant to "make" new crimes, is legally wrong in its violation of due process, morally reprehensible, and directly antithetical to the public good. It is, in a twist worthy of Charles Dickens, simply using the law to break the law.
Regardless of the merits of the underlying controversy involving his client, we conclude that Murrell was for the most part simply restating a position recognized by judges and lawyers alike. Whether the use of convicted confidential informants to assist the government in setting up criminal transactions or securing convictions violates due process in a particular situation is a debatable issue. Similarly, whether court sanction of the use of such informants in a particular way "impugns the integrity", "corrupts", or "prostitutes the integrity" of the court will be a debatable issue. While judges as individuals may question the use of the particular word chosen by Murrell in attempting to make his point, as a court we cannot objectively conclude that the language used was calculated to be contemptuous of the court process.
In the absence of any evidence of wilful or deliberate intent to disrupt, it should be rare that the mere use of a word or phrase which may have negative or distasteful connotations will be sufficient to constitute criminal contempt. Affirming the trial court here would be tantamount to classifying as contempt per se the use of a term that we and others have concluded may be legitimately used in instances such as those involved herein. On the record before us we can find no evidence, either directly or by inference, of any intent to disrupt the trial nor of any bad faith in the use of the language in question. Rather, it would appear that Murrell was making his argument in good faith, considering the *1052 similarity of the language he used to that used in published court opinions.
We reverse the trial court's judgment of contempt and remand with directions that the judgment be vacated and appellant discharged.
DOWNEY J., concurs.
STONE, J., concurs specially with opinion.
STONE, Judge, concurring specially.
I concur separately to recognize that it is clearly contempt for counsel to imply that a judge is, or by his ruling would be, prostituting his integrity by failing to rule a particular way on any issue. Cf. Ex parte Earman, 85 Fla. 297, 95 So. 755 (1923); In re Weinstein, 518 So.2d 1370 (Fla. 4th DCA 1988); Scott v. Anderson, 405 So.2d 228 (Fla. 1st DCA), rev. denied, 415 So.2d 1359 (Fla.), rev. denied, 415 So.2d 1361 (Fla. 1982); Saunders v. State, 319 So.2d 118 (Fla. 1st DCA 1975), cert. discharged, 344 So.2d 567 (Fla. 1977); Martinez v. State, 339 So.2d 1133 (Fla. 2d DCA 1976), approved on other grounds, 346 So.2d 68 (Fla. 1977). See also Fabian v. State, 585 So.2d 1158 (Fla. 4th DCA 1991). As I read the record, that is what the trial court believed counsel was saying. Further, a finding of contempt in such circumstances would be particularly appropriate here, where counsel was requested several times to consider a retraction or rewording of his point and refused to do so. E.g., Sandstrom v. State, 309 So.2d 17 (Fla. 4th DCA 1975), cert. discharged, 336 So.2d 572 (Fla. 1976).
I concur in reversing, not because the language in Cruz, or the concurring opinion of Hunter, permits counsel to insult the court, but because this record does not support a conclusion that such an offense was intended, or understood, by counsel.