645 So.2d 71 (1994)
George SCHENCK, Appellant,
v.
STATE of Florida, Appellee.
No. 93-2082.
District Court of Appeal of Florida, Fourth District.
November 9, 1994.
Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Edward L. Giles, Asst. Atty. Gen., West Palm Beach, for appellee.
FARMER, Judge.
We reverse this conviction for direct criminal contempt of court. Defendant was in court for a bond reduction hearing after being charged with violating his probation. After hearing evidence and argument on the motion, the court announced its ruling and the following occurred:
"COURT: * * * At this time, the Motion for Bond Reduction is denied. Mr. Schenck, you are ordered held without bond pending trial.
"SCHENCK: Fuck that.
"COUNSEL: Thank you, Judge.
"COUNSEL: Thank you, Your Honor.
"COURT: I beg your pardon sir?
"SCHENCK: I said `fuck that.'
"COURT: Come back here, please, sir.
"BAILIFF: Bring him back. Bring him back. Step back.
"COURT: Let's wait a moment. I think we need some additional bailiff support. I *72 am going to deal with this. I guess there may be a possibility of several people named to be witnesses that I certainly think the record will reflect what was said. So, I don't think that you all need to remain unless if you want to. We do need some additional bailiff support, probably about two.
"COURT: Okay, let's go ahead and take the Schenck case and decide where we are going to go. You are George Schenck?
"SCHENCK: I am.
"COURT: Mr. Schenck, as you were leaving the courtroom you made a remark which I think is contemptuous. Is there any reason why the court should not find you in contempt for making the remark that you did?
"SCHENCK: Your honor, this is your courtroom. Do what you wish, okay? I see no justice being served here. I was attempting to change my lifestyle. Okay? I have stopped selling dope. I was off the streets. My wife died. I was a violator. I lost my job. I had a bond; then the bond was lifted. I am very [inaudible]. I am very hostile where the system is concerned. I could care less about the system at this point. So do as you wish. I have nothing else to say."
At that point, the court inquired of defense counsel whether he wished to add anything, and the lawyer in turn inquired whether the judge was conducting a contempt hearing. The judge answered: "[t]his is a contempt hearing for direct criminal contempt." Defense counsel then wondered whether he could be both a witness and represent the defendant at the same time, and inquired whether a different attorney should be appointed to represent Schenck. In ruling that defense counsel would not be a witness because the alleged contempt was committed in the presence of the court, the trial judge said: "I did make the comment after Mr. Schenck had left that each person in the courtroom is a witness." [e.s.] After his lawyer was allowed to consult with Schenck and argued in mitigation of the sentence for contempt, the following ensued:
"COURT: * * * Mr. Schenck, anything further you wish to tell me?
"SCHENCK: No sir, that is everything I have to say.
"COURT: Mr. Schenck, I do find that your comment to be [sic] clearly contemptuous and do find you in contempt of the court. Considering the information which is offered in mitigation, it is the sentence of this court  well, I do adjudge that you are guilty of contempt. It is the sentence of the court that you serve 30 days in county jail. This is consecutive to any other sentence."
A written judgment of contempt was entered on the same day. It is the standard preprinted form used in this state for criminal convictions. Omitting formalities, and highlighting only the handwritten parts, the pertinent printed and handwritten text of the judgment states:
"The Defendant, George Schenck, being personally before this Court * * * and having
been tried and found guilty by [] Jury/[X] Court of the following crime(s)

Contempt of Court [Offense Statute] 38.22 [Degree] M2

[X] and no cause being shown why the Defendant should not be adjudicated guilty, IT IS ORDERED THAT the Defendant is hereby ADJUDICATED GUILTY of the above crime(s)." [e.o.]
Defendant makes three arguments against his contempt conviction: (1) it punishes a speaker for merely uttering words to no one in particular and without any intent to hinder or disrupt court proceedings or any purpose to embarrass or degrade a judge or impugn the integrity of the judiciary; (2) the judgment is defective in failing to recite the facts upon which it is based; and (3) the court erroneously entered two separate judgments and sentences for a single act of contempt. At the outset we reject the third argument entirely as the record shows but one judgment and sentence. We agree with the second ground, however, and therefore do not decide the first.
The second is a technical or procedural ground, and thus we refer to the procedural rules. Rule 3.830 unambiguously requires *73 that the criminal contempt judgment recite the facts on which the adjudication is based.[1] We have emphasized only recently that the provisions of rule 3.830 define the essence of due process in criminal contempt proceedings and must be scrupulously followed. Peters v. State, 626 So.2d 1048, 1050 (Fla. 4th DCA 1993); accord, Cook v. State, 636 So.2d 895 (Fla. 3d DCA 1994). We have also explicitly held that the rule's requirement of a recital of evidentiary facts supporting the finding of contempt must be carried out in all cases. Oates v. State, 619 So.2d 23 (Fla. 4th DCA), (contempt adjudication held improper where judgment did not recite facts constituting contempt) rev. denied, 629 So.2d 134 (1993); and Woods v. State, 600 So.2d 27 (Fla. 4th DCA 1992) (contempt judgment must include recital of facts constituting contempt); accord, Spivey v. State, 616 So.2d 550 (Fla. 2d DCA 1993); Johnson v. State, 584 So.2d 95 (Fla. 1st DCA 1991); Wells v. State, 487 So.2d 1101 (Fla. 5th DCA), cause dism'd, 491 So.2d 281 (Fla. 1986); Tenorio v. State, 462 So.2d 880 (Fla. 2d DCA 1985); Osborne v. State, 430 So.2d 551 (Fla. 2d DCA 1983); Ray v. State, 352 So.2d 110 (Fla. 1st DCA), cert. denied, 360 So.2d 1250 (Fla. 1977); but see Gidden v. State, 593 So.2d 294 (Fla. 5th DCA), approved, 613 So.2d 457 (Fla. 1993) (oral findings of indirect criminal contempt stated on record are sufficient under rule 3.840(a)(6)). All of the above rule 3.830 cases were reversals of contempt convictions.
We think that the rule's requirements serve a necessary purpose and are thus not merely discretionary. In a case like the present, where the circumstances surrounding the utterance are not apparent from the face of the written record,[2] a recital of all of the pertinent facts is simply indispensable to meaningful appellate review. We conclude that the omission is critical in this case, especially in light of the following applicable substantive principles of criminal contempt.
In Ex parte Crews, 127 Fla. 381, 173 So. 275 (1937), the supreme court defined contempt thus:
"It may be said broadly, but certainly, that any act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice, or which is calculated to lessen its authority or its dignity, is a contempt. The test is not the physical propinquity of the act to the court, but its tendency to directly affect the administration of justice." [c.o.]
Crews, 173 So. at 279; see also Clein v. State, 52 So.2d 117 (Fla. 1950). As Judge Anstead recently wrote for this court:
"In the absence of any evidence of wilful or deliberate intent to disrupt, it should be rare that the mere use of a word or phrase which may have negative or distasteful connotations will be sufficient to constitute criminal contempt."
Murrell v. State, 595 So.2d 1049, 1051 (Fla. 4th DCA 1992) (reversing contempt conviction for arguing that nonaction by the judge would be "prostituting the integrity of the court").[3] To borrow from Justice Frankfurter: "[t]rial courts no doubt must be on guard against confusing offenses to their sensibilities with obstructions to the administration of justice." Brown v. United States, 356 U.S. 148, 153, 78 S.Ct. 622, 626, 2 L.Ed.2d 589 (1958).
This power of punishing contempt is a jurisprudential aberration. The very person who was the object of the offensive words or conduct names and prosecutes the accused, adjudges the defendant guilty, and then imposes the punishment.[4] It is a setting without *74 counterpart anywhere else in the law. Admittedly ours is not an original observation. See Int'l Union United Mine Workers of America v. Bagwell, ___ U.S. ___, 114 S.Ct. 2552, 129 L.Ed.2d 642, (1994); Bloom v. Illinois, 391 U.S. 194, 202, 88 S.Ct. 1477, 1482, 20 L.Ed.2d 522 (1968). The Bloom court perspicaciously noted that "contumacy `often strikes at the most vulnerable and human qualities of a judge's temperament.'" 391 U.S. at 202, 88 S.Ct. at 1482; Bagwell, ___ U.S. at ___, 114 S.Ct. at 2259. And, added Bagwell, "its fusion of legislative, executive, and judicial powers `summons forth * * * the prospect of the most tyrannical licentiousness." ___ U.S. at ___, 114 S.Ct. at 2259.
For these reasons, judges should approach the possible exercise of this unique power with the same hesitant caution and wariness one would use in picking up a glowing ember. It must be used only rarely and with circumspection. Seaboard Air Line R. Co. v. Tampa, S.R. Co., 101 Fla. 468, 134 So. 529 (1931); Demetree v. State, 89 So.2d 498 (Fla. 1956). The provocation must never be slight, doubtful, or of shifting interpretations. The occasion should be real and necessary, not murky, and not ameliorated in some less formal manner.
In this case, we cannot tell with any degree of confidence from our review of the record whether any proceedings were disrupted, or whether anyone else was present in the courtroom other than the people involved in this case and courtroom personnel. It appears that defendant was actually on his way out of the courtroom when he spoke the subject words, for the court had to direct the bailiff to return the defendant to the presence of the court. When he was returned, the court spoke of making statements while he was outside the courtroom.
Nor can we tell whether the court itself, or any other person in the vicinity, actually heard the original utterance ("I beg your pardon sir."). Also the record does not indicate whether the offending words were aimed directly at the judge, or instead at the situation in which defendant found himself. These are necessary facts, not because the physical location of a contemptuous utterance is dispositive as such, but because of their relevance to the critical issue whether the words embarrassed, hindered or obstructed the administration of justice, or were specifically calculated, i.e. intended, to lessen the authority or dignity of the court. Defendant argues that there is simply no evidence at all, aside from the utterance itself, of any contumacious intent. Without a statement of the facts on which the finding is based, we cannot discern from the record whether the argument is valid or invalid. Thus the failure of this judge to set down on paper just what facts lay beneath the charge and finding of contempt becomes all important.
In reaching our decision, we do not belittle what the court sought to vindicate. The setting was in the very place where our laws and rights and obligations are given effect  i.e., the forum where public justice is done. It is not then the setting for the intemperate, unrestrained and earthy speech of the barrack, the backroom or the barricade. It is not a site where coarse and vulgar words can be employed to intimidate, to hector or to bully, in the transaction of legal business. The language of this land is broad and deep and rich enough, in all conscience, to empower the litigants and lawyers who gather there to vindicate their rights, to discharge their duties, to sustain their causes, without recourse to common vulgarities.
We state unequivocally that trial judges must be allowed to be in control of their courtrooms. The very nature of the business carried on insures that persons of unsuitable purpose may be found there; some may want to use the judicial stage for their own ends. The judges who preside in these venerable rooms must have tools suitable to the purpose when the loss of control is threatened, and the dignity and purpose are challenged.
We thus do not denigrate the powerful remedy of criminal contempt; indeed it is precisely because of its potency that we strain to reemphasize the requirements for its use. Our decision today simply reflects the failure to comply with rule 3.830 by a clear statement of the facts underlying the *75 contempt judgment and the lack of clear indisputable record support. Nothing in today's opinion should be understood by anyone as an expression on the merits of the contempt finding. We hereby expressly disavow any decision on whether the conduct charged in this case constitutes criminal contempt of court.
We thus reverse and remand for consistent proceedings.
HERSEY and STONE, JJ., concur.
NOTES
[1] See Fla.R.Crim.P. 3.830 ("The judgment of guilt of contempt shall include a recital of those facts on which the adjudication of guilt is based."). [e.s.]
[2] E.g., Who was present in the courtroom and heard the remark? Was defendant on his way out of the courtroom door when he said the words, or was he in front of the bench? What was the effect of the utterance on the proceedings in the courtroom?
[3] We recognize that a judgment of contempt is clothed with the usual presumption of correctness and will not be disturbed unless it lacks support in the law and record evidence. Murrell, 595 So.2d at 1050; In re Weinstein, 518 So.2d 1370 (Fla. 4th DCA 1988).
[4] Justice Black once characterized the power of a single judge to summarily try contempts committed in the presence of the court "as `perhaps, akin to despotic power of any power existing under our form of government.'" Green v. United States, 356 U.S. 165, 193-194, 78 S.Ct. 632, 648.649, 2 L.Ed.2d 672 (1958) (Black, J., dissenting).