751 So.2d 612 (1999)
Randy BERMAN, Appellant,
v.
STATE of Florida and Chris Jones, Appellees.
No. 98-3215.
District Court of Appeal of Florida, Fourth District.
December 1, 1999.
Anthony J. Natale of Anthony J. Natale, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Leslie T. Campbell, Assistant Attorney General, West Palm Beach, for Appellee-State of Florida.
TAYLOR, J.
Randy Berman, an assistant public defender for the 15th Judicial Circuit, appeals an order adjudging him guilty of direct criminal contempt for his conduct during the clerk's announcement of a not guilty jury verdict on a first degree murder charge.
We reverse appellant's contempt conviction upon our finding that the trial court failed to follow Florida Rule of Criminal Procedure 3.830 in adjudicating appellant guilty of direct criminal contempt. We have also considered the merits of the criminal contempt judgment and conclude that appellant's conduct, though unprofessional and undignified, did not amount to direct criminal contempt.
Appellant was appointed to represent a defendant charged with first degree murder and two counts of armed robbery. After several days of trial, the jury reached a verdict and returned to the courtroom shortly after noon. The transcript of the proceedings during announcement of the jury's verdict on Count I, first degree murder, reflects the following:

*613 THE CLERK: In the Circuit Court of the 15th Judicial Circuit, Criminal Division, in and for Palm Beach County, Florida. Case number 98-01702CF A02, Division V. State of Florida versus Chris Jones. Verdict: We, the jury, find as follows, as to Count I, we, the jury find the defendant not guilty.
THE COURT: Counsel, I'm going to have a talk with you after this is completed.
The Clerk then read not guilty verdicts on the remaining armed robbery counts. At 12:28 p.m., the court excused the jury. After the jury left the courtroom, the trial judge addressed appellant as follows:
Mr. Berman, I find you to be in direct criminal contempt of the Court for your behavior upon the reading of the jury verdict.
I find it not only unprofessional, but, I believe, unethical. And I will not tolerate that kind of behavior in my courtroom by anybody. I will fine you $500, give you 30 days to pay it. And I will not tolerate that kind of behavior ever again in the courtroom, and I don't think any other judge on the face of the Earth would tolerate it either.
Thank you, we'll be in recess.
The court issued an order finding appellant in direct criminal contempt and imposing a $500 fine. In an amended order, the trial judge made the following findings:
Upon the Clerk reading the words "not guilty" as to Count I, defense counsel Randy Berman loudly pounded his hand or fist against the defense table, and yelled "Yesssss", both in a manner so loud and abrupt as to bring the proceedings in the courtroom to a halt. This behavior was noticeably upsetting to the jury and other members of the public present in the courtroom, all of whom witnessed and were able to hear the outburst. Such conduct by attorney Randy Berman interfered with, and interrupted the orderly conduct of the Court's business, which at that time was completion of publishing of the verdict as to Counts II and III, orderly dismissal of the jury, and entry of the appropriate Judgment.
Appellant contends, and the state properly concedes, that the trial court erred in summarily adjudicating appellant guilty of direct criminal contempt without complying with the procedures set forth in Florida Rule of Criminal Procedure 3.830. Rule 3.830 states in pertinent part:
Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against the defendant and inquire as to whether the defendant has any cause to show why he or she should not be adjudged guilty of contempt by the Court and sentenced therefor. The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances.
Here, after the clerk read the verdict on the murder count, the trial judge addressed appellant, stating, "I am going to have to talk with you after this is completed." The court excused the jury after verdicts were published on the remaining counts and, immediately thereafter, found appellant in contempt. Appellant was not given an opportunity to show cause why he should not be adjudicated guilty of contempt, nor afforded an opportunity to present evidence of excusing or mitigating circumstances.
We have consistently held that strict compliance with Rule 3.830 is necessary to safeguard procedural due process. See Schenck v. State, 645 So.2d 71, 72 (Fla. 4th DCA 1994); Peters v. State, 626 So.2d 1048, 1050 (Fla. 4th DCA 1993); Kahn v. State, 447 So.2d 1048 (Fla. 4th DCA 1984). More recently, in Martin v. State, 711 So.2d 1173 (Fla. 4th DCA 1998), we reversed a direct criminal contempt conviction because the trial court failed to give the defendant an opportunity to explain why he should not be held in contempt, even though we agreed that the defendant's remarks were patently contemptuous. There, we remanded the case with *614 directions to give the defendant an opportunity to show cause why he should not be adjudicated guilty of contempt and to present evidence of mitigating circumstances. Id. at 1175. In this case, however, we find it unnecessary to remand this matter for further proceedings, because the record fails to support a finding that appellant's conduct constituted a willful, intentional, or substantial interference and/or interruption of the orderly conduct of the court's business.
A judgment of contempt is entitled to a presumption of correctness and it will not be disturbed when supported by the record. Murrell v. State, 595 So.2d 1049, 1051 (Fla. 4th DCA 1992); In Re Weinstein, 518 So.2d 1370, 1372 (Fla. 4th DCA 1988). In Schenck, we applied the supreme court's definition of contempt set forth in Ex parte Crews, 127 Fla. 381, 173 So. 275, 279 (1937):
[A]ny act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice, or which is calculated to lessen its authority or its dignity, is a contempt. The test is not the physical propinquity of the act to the court, but its tendency to directly affect the administration of justice.
645 So.2d at 73.
In Murrell, we held that the standard to be applied in determining whether conduct amounts to criminal contempt is "an objective one based upon a determination of the conduct's tendency to hinder the administration of justice, rather than a subjective one concerned with the sensitivities of a particular judge." 595 So.2d at 1049. We further noted that "the conduct alleged to be contemptuous must be calculated to cause harm." Id. at 1050. See also Vines v. Vines, 357 So.2d 243, 246 (Fla. 2d DCA 1978)(the true test is whether the conduct interferes with or impugns the judicial function, not whether it causes a particular judge to feel aggrieved or vexed) (citing Ex parte Earman, 85 Fla. 297, 95 So. 755 (1923)).
Applying the above objective standard, we cannot conclude from the record that appellant's behavior, upon announcement of the verdict, tended to hinder the administration of justice or was calculated to cause harm. Neither the transcript of the proceedings nor the trial court's factual findings in the amended order establish beyond a reasonable doubt that appellant's conduct, though undignified and unprofessional, was disruptive and harmful to the integrity of the court.[1]See Krueger v. State, 351 So.2d 47 (Fla. 3d DCA 1977)(where contempt judgment is not objectively supported by court transcripts, it is procedurally defective). The transcript reflects that the jury entered the courtroom at 12:24 p.m., and that they were excused four minutes later, after the clerk read the verdicts and the court thanked the jury for their service. The entire episode, including the contempt adjudication and discharge of the defendant, occurred in less than five minutes. Apart from the judge's remarks to appellant after the clerk read the verdict on the first count, the record is silent regarding any intentional or substantial interference with the orderly conduct of the court proceedings. At most, the acts described in the order, i.e., striking the table and yelling "yesssss," appear to have occurred spontaneously in response to the not guilty verdict. The record does not reveal any calculated attempts by appellant to disrupt court proceedings or disobey the court's instructions. Had the trial court cautioned the parties and counsel beforehand that they were not to display any reactions to the verdict, then appellant's conduct would constitute a direct violation of a court order and be chargeable as direct criminal contempt. See In re Weinstein, 518 So.2d 1370 (Fla. 4th DCA 1988)(counsel's failure to stand when making objections after being *615 ordered to so was a willful disobedience of a court order representing an affront to the court's authority). However, absent a failure to heed the court's warnings or explicit directions, we are not inclined to uphold appellant's conduct as willful and deliberate action to disrupt the proceedings.
By our ruling in this case, we do not condone appellant's conduct, which was inappropriate, unprofessional, and unbecoming of an officer of the court. An attorney, as an officer of the court, "should support the authority of the court and the dignity of the trial court by strict adherence to the rules of decorum and by manifesting an attitude of professional respect toward the judge, opposing counsel, witnesses, jurors, and others in the courtroom." American Bar Association Standard of Criminal Justice (2d ed. Sup.1982). We do observe, however, that the adjudged contemnor in this case was counsel for the defendant in a criminal trial. Calling attention to the special significance of this circumstance, the United States Supreme Court has said:
[A court has a] duty to safeguard two indispensable conditions to the fair administration of criminal justice: (1) counsel must be protected in the right of an accused to `fearless, vigorous and effective' advocacy, no matter how unpopular the cause in which it is employed; (2) equally so will this Court `protect the processes of orderly trial, which is the supreme object of the lawyer's calling.'
Offutt v. United States, 348 U.S. 11, 13, 75 S.Ct. 11, 99 L.Ed. 11 (1954)(quoting Sacher v. United States, 343 U.S. 1, 13-14, 72 S.Ct. 451, 96 L.Ed. 717 (1952)).
The passionate advocacy inherent in the defense of a client accused of first degree murder cannot be overstated. Months, and sometimes years, of preparation, along with dozens of court appearances on motions and calendar calls, eventually lead to a trial before a jury. The trial then culminates in those final fateful moments when the jury verdict is read. The fear and sense of foreboding felt by counsel during the interminable period before the verdict is announced can become unbearable and even exceed the anxiety levels of the accused. It is against this dramatic backdrop, when time seems suspended and breathing halted, that the verdict announcement can unleash a bundle of emotions and produce a variety of reactions. Appellant's conduct, which the trial court found to be contemptuous, could also be characterized as a raucous "sigh of relief" at the end of a hard-fought battle for acquittal.
Viewed from the perspective of the trial judge, however, an emotional outburst following a jury verdict can shatter the hushed stillness in the courtroom and spark turbulence and chaos among spectators and grief-stricken friends and family members of the victim. Maintaining calm and peace at this juncture is of paramount concern to the court. Like the litigants, the trial judge has expended considerable time and resources in bringing the case to a final resolution. Yet, the responsibility of protecting the public and the integrity of the judicial process falls solely upon the judge. See In Re Weinstein, 518 So.2d at 1373-74 ("Decorum in the courtroom is the responsibility of the trial judge and contempt is one of many methods available for enforcing the exercise of this responsibility."). The judge has a duty to prevent any conduct which threatens to disrupt or obstruct the orderly flow of court proceedings. To effectively carry out this duty, a judge must remain alert and attuned to any tension generated by trial developments. Further, the judge must be sensitive to the feelings of all those present in the courtroom.
In his amended contempt order, the trial judge in this case demonstrated such sensitivity, summarizing his perceptions of the human impact of appellant's conduct as follows:
This behavior was noticeably upsetting to the jury and other members of the public present in the courtroom, all of *616 whom witnessed and were able to hear the outburst.
As Justice Frankfurter cautioned, however, "[t]rial courts ... must be on guard against confusing offenses to their sensibilities with obstructions to the administration of justice." Brown v. United States, 356 U.S. 148, 153, 78 S.Ct. 622, 626, 2 L.Ed.2d 589 (1958). The same applies to the court's efforts to shield others in the courtroom from offensive behavior. Although the power to punish for contempt is essential to the administration of justice, the criminal contempt power should be used cautiously and sparingly and reserved for those instances in which conduct is calculated to hinder, embarrass, delay or obstruct justice. See Clein v. State, 52 So.2d 117 (Fla.1950); Schenck, 645 So.2d at 74.
In light of the circumstances in this case, we do not find that the record supports a finding beyond a reasonable doubt that appellant's actions substantially disrupted or delayed the court proceedings or that he acted willfully and intentionally to interfere with the orderly conduct of the proceedings. Moreover, we find that a judgment of criminal contempt against appellant was not necessary `to vindicate the authority of the court or to punish otherwise for conduct offensive to the public.' See Mrha v. Circuit Court Felony Div., 537 So.2d 182, 184 (Fla. 4th DCA 1989) (citing Pugliese v. Pugliese, 347 So.2d 422, 424 (Fla.1977)).
Accordingly, we reverse with directions to vacate the judgment of direct criminal contempt.
REVERSED.
SHAHOOD, J., and ROTHSCHILD, RONALD J., Associate Judge, concur.
NOTES
[1] In his initial and reply briefs, appellant strenuously denies ever saying "Yessss" and calls attention to the absence of a transcript, testimony or affidavits documenting the acts complained of and recited in the amended order.