981 So.2d 576 (2008)
Jeffrey W. WIGGS, Petitioner,
v.
STATE of Florida, Respondent.
No. 5D07-3279.
District Court of Appeal of Florida, Fifth District.
May 9, 2008.
Jeffrey W. Wiggs, Tavares, Pro Se.
Bill McCollum, Attorney General, Tallahassee, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, for Respondent.
PER CURIAM.
Jeffrey W. Wiggs, was found guilty of direct criminal contempt in a proceeding before the Honorable Donna F. Miller, County Judge. He appealed to the circuit court, which affirmed without opinion over Judge Lambert's dissent. Because we find the circuit court's order constitutes a departure from the essential requirements of law, we grant certiorari and quash the order. We do so for the reasons fully and cogently articulated in Judge Lambert's dissenting opinion, which we adopt as our own and set out in full:
The Appellant, Jeffrey W. Wiggs, an attorney licensed to practice law in the State of Florida, has timely appealed the order of the lower court adjudicating him in direct criminal contempt of court. While I do not condone the behavior of the Appellant, I respectfully dissent from the majority opinion because I believe that there was insufficient compliance with the rule pertaining to direct criminal contempt proceedings.

*577 [Florida Rule of Criminal Procedure] governs direct criminal contempt proceedings. The rule reads as follows:
Rule 3.830. Direct criminal contempt.
A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court. The judgment of guilt of contempt shall include a recital of those facts on which the adjudication of guilt is based. Prior to the adjudication of guilt, the judge shall inform the defendant of the accusation against the defendant and inquire as to whether the defendant has any cause to show why he or she should not be adjudged guilty of contempt by the court and sentenced therefor. The Defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances. The judgment shall be signed by the judge and entered of record. Sentence shall be pronounced in open court.
A criminal contempt proceeding is maintained solely to vindicate the authority of the court or to punish for conduct offensive to the public in violation of court order. May v. State, 623 So.2d 601 (Fla. 2d DCA 1993). The Appellant, Wiggs, appeared before the trial court representing a client on what appeared to be a change of plea proceeding. Because the actions of the Appellant for which the trial court held him in contempt were actions that occurred in the presence of the trial judge, the direct criminal contempt proceeding is appropriate. However, strict adherence to the procedural requirements of Rule 3.830 is absolutely imperative because its provisions constitute the essence of due process. Bauder v. State, 923 So.2d 1223 (Fla. 3d DCA 2006), quoting from Peters v. State, 626 So.2d 1048, 1050 (Fla. 4th DCA 1993). Furthermore, any failure to follow the procedural requirements in contempt proceedings under this rule is fundamental error and an objection in the trial court is not required to preserve the issue for appellate review. Hutcheson v. State, 903 So.2d 1060, 1062 (Fla. 5th DCA 2005); Garrett v. State, 876 So.2d 24, 25 (Fla. 1st DCA 2004). The requirement in the rule that there also be a signed, written order which contains a recital of the facts upon which the adjudication of guilt on the direct criminal contempt matter is based is to assure compliance with the long-standing rule that the powers of contempt should be exercised with care and circumspection. Hutcheson [, 903 So.2d] at 1062, quoting Guardado v. Guardado, 813 So.2d 236, 237 (Fla. 5th DCA 2002). A trial court's failure to afford the defendant an opportunity to present mitigating evidence or to discuss why the trial court should or should not impose a particular sentence, after asking the defendant to show cause why he should not be held in direct criminal contempt, also constitutes fundamental error. Hibbert v. State, 929 So.2d 622 (Fla. 3d DCA 2006).
The limited record in this present appeal reflects that the Appellant was representing a client on a criminal misdemeanor battery charge. The client was tendering a no contest plea to the charge and there became a dispute, at this hearing, as to the terms and conditions of the plea, primarily, whether there would be a withhold of an adjudication of guilt or whether the Appellant's client would be permitted a specified time to complete an anger management course at which time, upon successful completion of the course, a dismissal of the charges *578 would be entered. The confusion apparently stemmed from the fact that the prosecutor who allegedly negotiated the agreement with the Appellant was not the prosecutor who appeared at the change of plea hearing before the trial court. The Appellant expressed frustration, in open court, at the problems toward the resolution of the case and, ultimately, the trial court directed the Appellant to move himself to the state attorney's table and renegotiate what is on the piece of paper (i.e., the plea agreement). When the Appellant began responding to that direction, the trial court inquired as to whether the Appellant was refusing to walk over to the table and renegotiate the deal because, if so, "then we're going to talk contempt of court." The Appellant responded that he was not aware of what he had done contemptuous. Thereafter, the following took place:
THE COURT: Mr. Wiggs, I've ordered you to go talk to the State. If you're saying you're refusing, that's contempt.
MR. WIGGS: Set it for trial, Judge.
THE COURT: Mr. Wiggs, we have a different question here. I ordered you to go talk to the State. If you're refusing, that's contempt.
MR. WIGGS: If I don't want to talk to the State?
THE COURT: Correct.
MR. WIGGS: I'd rather that the matter be set for trial.
THE COURT: Okay, Have a seat and we'll talk about your contempt case in just a moment.
Eventually, during this session, the Appellant's client's case was resolved. Prior to that resolution, the following dialogue took place between the Appellant and the trial court:
MR. WIGGS: Judge, if it may please the Court, I'd like to make something clear, first of all.
THE COURT: Is that an apology?
MR. WIGGS: If you want to consider it one. I don't want to be rude to the Court. Of course, I would apologize 
THE COURT: So you're saying you weren't intending to be rude?
MR. WIGGS: No, I have no intention to be rude to this Court, but I do  Judge, I came in here with a negotiated sentence, and then what I thought was a little awkward was to say to negotiate with the State. I had negotiated this with the State.
After the plea agreement was reached and the case involving the Appellant's client was resolved, the trial court cleared the courtroom and the following occurred:
THE COURT: Okay, Mr. Wiggs, you were incredibly rude. This was not a difficult problem to work out, and the only difficulty occurred because of you. Is there some health issue that's a problem today, that you're not feeling well today?
MR. WIGGS: Ma'am, I feel fine today. I find it 
THE COURT: That's a blessing.
MR. WIGGS:  frustrating to come in here and to have the State just hand me the plea back and say it's an illegal sentence. First and foremost 
THE COURT: Mr. Wiggs, you wrote down a mistake on that piece of paper.
MR. WIGGS: That mistake is not an illegal sentence, though. It does not make it an illegal sentence to say, "Withhold."
THE COURT: Okay, it's an illegal sentence to have a fine and to have a *579 withhold. So if nothing else, that's illegal.
MR. WIGGS: Judge 
THE COURT: So you wrote that down on the piece of paper. I don't know if you wrote it down wrong that caused all this problem or if Miss Manno may have dictated it wrong, but that's an illegal sentence.
MR. WIGGS: Okay.
. . . .
THE COURT: . . . Mr. Wiggs, I want a clear, clean apology for your behavior today or we will continue with a contempt of Court.
MR. WIGGS: Judge, I don't 
THE COURT: I want an apology or we'll be having a contempt of court hearing right now.
MR. WIGGS: Would you advise me what would be the basis of the contempt?
THE COURT: Your rudeness to the Court, your refusal to participate in a direct order that you walk across the room and clear up the confusion on this piece of paper.
MR. WIGGS: Judge, if I may please address you. First, I feel that the Court interrupted me several times when I was trying to make a comment to the Court. Okay. I'm not asking for any apology, though, from the Court. Okay. Now, second, the State was taking a different track here today when I extended the plea and just asked that they execute it and said that they were not executing 
THE COURT: Okay, Mr. Wiggs, I find you in direct criminal contempt for refusing to apologize for your rudeness to the Court. There's some question about whether I can fine or not fine. That's up in the air. I'm going to assume that I can. I fine you fifty dollars. . . . I find you guilty of contempt of court.
The Appellant paid the fifty dollar fine. This does not render the appeal moot because the conviction does impact this Appellant, a licensed attorney, by having a criminal contempt conviction on his record. Bauder [, 923 So.2d at 1224 n. 1]. The order of contempt indicated that the Appellant "refused a direct order of the court and the attorney was rude." I believe that this order is defective and fails to recite the facts upon which it is based. See Schenck v. State, 645 So.2d 71 (Fla. 4th DCA 1994); Montoya v. State, 695 So.2d 873 (Fla. 3d DCA 1997) and Hutcheson, supra (reversal required when trial court entered a form order which fails to include any recitation of facts upon which the direct criminal contempt adjudication is based). I also frankly have concerns whether these actions do, in fact, constitute direct criminal contempt of court though I recognize that an appellate court, when merely examining the cold record on appeal, does not have the firsthand opportunity that the trial judge has to specifically see the conduct at issue and that an appellate court should defer to the factual determinations of the trial court. Nevertheless, I also believe the Appellant did not have a sufficient opportunity to present mitigating evidence or to discuss with the trial court why it should not impose a particular sentence, the failure of which constitutes fundamental error. Hibbert at 622; Garrett at 25 (reversal when appellant was neither informed that under the rule he could present mitigating circumstances, nor given a separate and distinct opportunity to present mitigating circumstances).
While I believe that this matter should be reversed, by no means do I suggest to the Appellant that I condone *580 his behavior. The Appellant, as an attorney, while obligated to zealously represent his client, is also an officer of the court. A reading of the record indicates that there may have been a minor glitch in resolving the case initially at the change of plea hearing and that the trial court was merely attempting to have the parties, through counsel, finalize their slight difference so that the case could be resolved. It obviously was not an insurmountable task as the client's case was resolved during the course of that hearing, albeit after discussions diverted towards the issue of the Appellant's alleged contemptuous behavior before the trial judge. It seems entirely reasonable to me for the trial judge to have directed the attorneys to confer to work out the last minor issue and, if, for some reason, the attorneys were not able to do so, then, at that time, announce to the court that they have been unable to do so with the next step ostensibly then being to set the case for a later hearing or trial. The reading of the record suggests to me that the Appellant chose to make this unnecessarily confrontational. In my opinion, he used somewhat immature judgment in this hearing and while I do not believe that this incident should rise to the level of the Appellant having a criminal record for the adjudication of direct criminal contempt of court, I am only hopeful that my comments do not fall on deaf ears. In particular, I would hope that if he ever finds himself in the position of having a direct criminal contempt charge lodged against him because of his behavior in front of a trial court, one of his expressed defenses/comments is not that though it was the trial court that was rude but that he did not expect (or apparently require) an apology from the trial judge.
I respectfully dissent.
We quash the order before us. The trial court, should it wish to revisit this matter, shall strictly comply with the mandates of Florida Rule of Criminal Procedure 3.830. Additionally, the Clerk of this Court shall furnish a copy of this opinion to The Florida Bar for such action as may be appropriate.
CERTIORARI GRANTED; ORDER QUASHED.
PALMER, C.J. and ORFINGER, J., concur.
GRIFFIN, dissents, with opinion.
GRIFFIN, J., dissenting.
This is an unsatisfactory case. Although we have the power to reverse the decision of the circuit court sitting in its appellate capacity, I do not think we should do so in this case because the petitioner, Mr. Wiggs, had a thorough airing of the issues below and two of the three circuit judges sitting in their appellate capacity concluded that the county court's judgment of direct contempt should be sustained. We are not really in a position to gainsay that decision.
I agree with the majority that the dissenting judge on the circuit appellate panel lays out the best argument that can be made in avoidance of Mr. Wiggs' contempt. The problem is that the dissent itself acknowledges its principal weakness  that the trial court was present and was able to observe the petitioner's behavior and the appellate judges were not. The dissenting opinion, which the majority adopts as its own, acknowledges that it is not in a position to second-guess the trial court on the issue of whether the conduct was contemptuous for that reason. The opinion actually relies for its holding on the notion that the trial court failed to give Mr. Wiggs an adequate opportunity to offer mitigating evidence or to explain to the court why it *581 should not impose a particular sentence, but that doesn't hold water at all on this record. Mr. Wiggs was given ample opportunity to speak, but only succeeded in offending further. Furthermore, the penalty was nominal and is not at issue.
This reversal makes sense only if this court concludes that Mr. Wiggs' conduct was not contemptuous as a matter of law. Just looking at the colloquy quoted in the opinion, Mr. Wiggs' behavior may not rise to that level but, the opinion does not include the colloquy between Mr. Wiggs, the prosecutor and the judge that preceded the portion quoted.
The transcript shows that this problem all began when Mr. Wiggs announced to the court that his client was withdrawing his plea of not guilty and would plead nolo contendere, with an agreed fine of $250. He later explained that his client would be given ninety days to complete an anger management course and, if he did, the case would be dismissed. When the court questioned whether there would be a plea under those circumstances, he responded that there would be an adjudication of guilt. The State responded that such a "sentence," after adjudication, would be illegal. The court asked Mr. Wiggs if he had reduced this proposed agreement to writing, to which he responded affirmatively, but then said that the State had not signed it. Apparently recognizing that there was a problem with the plea agreement, but that it appeared to be more form than substance, the trial court suggested that the plea agreement be revised to clarify exactly what the parties contemplated.
Perhaps it was the strain of explaining and defending an agreement that seemed to morph as he described it and which neither the prosecutor or the judge seemed to think made any sense; or perhaps it was his wounded pride of authorship, but it is clear that, at this point, something began to work on Mr. Wiggs, as he started insistently to complain that it was the State that had called him and had proposed a plea agreement, presumably suggesting that the prosecutor ought not be heard to criticize whatever he drafted. The transcript suggests that he seemed oblivious to the concerns about how the agreement should be structured and expressed.
A recess was taken for an effort at revisions to be made. The court by then had apparently reviewed his draft because the judge asked Mr. Wiggs to confirm that he was contemplating a dismissal, pointing out that his proffered draft referred to a "withhold." With the same limpidity as before, Mr. Wiggs explained: "Withhold." "It's a dismissal, Judge." Then, Mr. Wiggs promptly recommenced blaming the State, although for what is never clear. The judge, probably (justifiably) exasperated, directed Mr. Wiggs over to the prosecutor's table to fix the plea agreement. At this, Mr. Wiggs evidently balked  both physically and spiritually. Thus begins the dialogue quoted in the majority opinion where Mr. Wiggs launches his demands that the court simply set the case for trial. Bad enough that he refused the court's order to do his job by getting undisputed terms for his client's agreed disposition into a written form so that, as the court said, they "can make some sense to us ninety days from now," but then, when asked by the court for an apology, he simply refused to make one. Instead, he informed the court that it was the court that had interrupted him when he was trying to make comments.
I think it is probably true that Mr. Wiggs did not intend disrespect of the court, but I also think that cluelessness and petulance can reach a point that they are objectively indistinguishable from contempt. The record also demonstrates that *582 the trial court only wanted the apology to which she believed herself entitled.[1]
Lest Mr. Wiggs consider that the majority's decision to quash the contempt order count as a vindication of his conduct, I just point out that seven judges have now weighed in on this courtroom event, and the total vote is four-to-three against him. He is very lucky that the last two were the ones he had to have. Next time  and I suspect there will be a next time  he may not be so lucky.
NOTES
[1] The entire panel agrees that the trial court failed to handle this situation as well as it should have been handled. It is an important skill of the trial judge to diffuse such displays of temper on the part of counsel rather than contribute to their escalation. As this case demonstrates, contempt is usually not effective unless used as a last resort.