ORFINGER, J.
 

 While attending a juvenile court proceeding, Michelle McRoy’s cell phone rang, drawing the attention of the presiding judge. Ms. McRoy was asked by the court why her phone was not turned off as the court instructed at the commencement of the proceedings. Ms. McRoy explained that she had turned her phone off as directed. However, while in court, she loaned the phone to her sister who went outside to make a call and returned the phone to her without turning it off. Ms. McRoy admitted that she did not check whether the phone was off when her sister returned the phone. Apparently viewing this conduct as contumacious, the trial court found Ms. McRoy in direct criminal contempt, forfeited the cell phone, and ordered the Orange County Sheriffs Department to destroy it. Ms. McRoy appeals and we reverse.
 

 Contempt is an act tending to embarrass, hinder, or obstruct the court in the administration of justice, or to lessen the court’s authority or dignity.
 
 Richey v. McLeod,
 
 137 Fla. 281, 188 So. 228, 229 (1939). Contempt does not exist just because a judge feels aggrieved or vexed.
 
 Via v. State,
 
 633 So.2d 1198, 1198 (Fla. 2d DCA 1994). Direct criminal contempt is summary punishment for conduct that occurs in the presence of the court. Fla. R.Crim. P. 3.830. Direct criminal contempt must be proven beyond a reasonable doubt.
 
 Braisted v. State,
 
 614 So.2d 639, 640 (Fla. 4th DCA 1993);
 
 see Hicks ex rel. Feiock v. Feiock,
 
 485 U.S. 624, 632, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988).
 

 Rule 3.830 requires that the judgment of guilt of contempt include a recital of those facts underlying the charged contempt upon which the adjudication of guilt is based. This requirement cannot be dismissed as merely a technical requirement.
 
 Gidden v. State,
 
 613 So.2d 457, 460 (Fla.1993). Purely conclusory statements will not meet the requirement of a recitation of facts. For example, cit
 
 *275
 
 ing the contemnor’s “unjudicious, unethical and intemperate conduct before the court” is insufficient.
 
 See Ray v. State,
 
 352 So.2d 110, 111-12 (Fla. 1st DCA 1977). Here, neither the written order nor the oral pronouncement of the court recited evidentia-ry facts supporting the finding of contempt. In its entirety, the substantive portion of the contempt order provides: “Michelle McRoy was found guilty of contempt of court. Cell phone is forfeited and to be destroyed by the Orange County Sheriffs Office.” The trial court’s oral statements at the contempt proceeding were equally lacking in specificity. This alone would require reversal for the entry of a proper order.
 

 Even if the order was facially sufficient, we would reverse the conviction of direct criminal contempt as there is no evidence beyond a reasonable doubt that Ms. McRoy’s actions, annoying as they undoubtedly were, embarrassed, hindered or obstructed the court in the administration of justice, or lessened the court’s authority or dignity. The power of contempt must be used only rarely and with circumspection.
 
 See State v. Clemmons,
 
 150 So.2d 231, 234 (Fla.1963). “The provocation must never be slight, doubtful or of shifting interpretations. The occasion should be real and necessary, not murky, and not ameliorated in some less formal manner.”
 
 Schenck v. State,
 
 645 So.2d 71, 74 (Fla. 4th DCA 1994).
 

 Trial judges must be allowed to control them courtrooms. They must have the tools suitable to the purpose when the loss of control is threatened and the dignity and purpose of the court are challenged. However, because of the potency of the powerful remedy of criminal contempt, we must carefully guard the requirements for its use, premised only on indisputable record support.
 
 Id.
 
 Because such proof is lacking here, we reverse the order of contempt.
 

 REVERSED.
 

 MONACO, C.J., and JACOBUS, J., concur.