DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**E.M.,** A Child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

Nos. 4D17-3557, 4D17-3568, 4D17-3566, 4D17-3564, 4D17-3563,
4D17-3561, 4D17-3560, and 4D17-3558

[March 27, 2019]

Consolidated appeals from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Michael Heisey, Judge; L.T. Case Nos. 562016CJ000769A, 562017CJ000697A, 562017CJ000556A, 562017CJ000472A, 562017CJ000390B, 562017CJ000153A, 562017CJ000012A, and 562016CJ000910C.

Carey Haughwout, Public Defender, and Virginia Murphy, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Anesha Worthy, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

A juvenile appeals a disposition order that includes a five-day detention sanction for direct criminal contempt. He argues: (1) the evidence does not support a direct criminal contempt finding; (2) the court erred in departing from the Department of Juvenile Justice's ("DJJ") recommended disposition; and (3) the court erred in failing to make the required findings in a written contempt order. We affirm on issues one and two, but we agree with him on issue three. We reverse and remand the case to the trial court for entry of a written order on the direct criminal contempt finding.

The twelve-year-old juvenile pleaded no contest to four cases and was placed on probation. The following week, he admitted to violating probation in those cases, and entered a no contest plea to four new substantive offenses. While awaiting his disposition hearing, the juvenile was arrested for a curfew violation and attended a detention hearing.

At the hearing, the court found probable cause for the probation violation based on the arrest affidavit. The State recommended secure detention until the disposition hearing. Defense counsel requested the juvenile be released to home detention with an electronic monitor.

At that point, the juvenile said something indiscernible. The judge then reminded him that he had just pleaded to four cases the week before and was back for having tampered with the electronic monitor. The judge advised him that he was going to securely detain him for twenty-one days to keep him out of trouble until his disposition hearing for his own good.

Immediately following that decision, the juvenile engaged in a verbal exchange with the trial court, which resulted in the court declaring the juvenile to be in direct criminal contempt. The trial court allowed the juvenile to explain why the contempt finding should not be entered and to mitigate the sanction. The court then signed a detention order placing the juvenile in secure detention for twenty-one days with an additional five days for direct criminal contempt. The trial court did not enter a written contempt order containing the requisite findings.

The DJJ completed a predisposition report, which recommended adjudication of delinquency and placement in a non-secure residential program, followed by post-commitment probation. At the disposition hearing, the State requested the trial court depart from the DJJ's recommendation in favor of a high-risk placement. Defense counsel argued against the departure, reminding the court of the rehabilitative purpose of juvenile justice and the juvenile's young age.

The court ordered the juvenile to a high-risk residential program. The court then explained the reasons for its departure from the DJJ's recommendation and subsequently entered a written order detailing the reasons for its departure. The order noted:

> The record before the court also established that [the juvenile] was uncontrollable by his father, grandmother or JPO and during the numerous times before the court he shared little to no discernable remorse for his actions. While he was on probation he was detained in the detention center on at least six secure detention orders and on October 9, 2017, after entering an open plea to the court, [the juvenile] was held in direct criminal contempt for his conduct in court.

The court identified five findings from the DJJ recommendation that

2

did not support the non-secure placement:

1. Level of Risk to Re-offend: "High."

2. The youth is noncompliant with all services.

3. Youth is only thirteen years old, but chooses to violate all rules with every chance he gets.

4. Father is incarcerated, mother doesn't want to deal with the youth's issues as she stated that the youth refuses to listen to her and follow the rules at home.

5. Not one of the court ordered sanctions have been satisfied while the youth has been on probation.

. . . .

Having considered the facts of each case as stated above, the continued pattern of escalating criminal behavior, the services that have been offered and failed to rehabilitate [the juvenile], the need to protect the community from future criminal acts, and the specific needs of the youth as outlined in the various evaluations completed; the court has determined that the most appropriate placement to address the youths [sic] needs is in a High Risk residential program. Simply put, this youth's needs cannot be addressed successfully in the time frame non-secure residential programs are structured. His high risk needs cannot be met in a program designed for low to moderate risk youth. The court respects the effort the Department of Juvenile Justice has put forth in preparing their recommendation for this youth, but on these specific cases, the Department has under weighed [the juvenile's] needs and the length of time, high risk programming, and high risk security of the High Risk program level is needed.

From this order, the juvenile now appeals.

We have reviewed the record and departure order entered in this case and find that the record supports the trial court's contempt finding and departure from the DJJ's recommended disposition. *See Murrell v. State*, 595 So. 2d 1049, 1050 (Fla. 4th DCA 1992); *E.A.R. v. State,* 4 So. 3d 614, 638–39 (Fla. 2009). We therefore dispense with further comment on these two issues.

3

There is merit, however, in the third issue raised, as acknowledged by the State. The juvenile argues the trial court erred in failing to strictly follow the procedures of Florida Rule of Criminal Procedure 3.830. Such a failure constitutes fundamental error. *See A.W. v. State*, 137 So. 3d 521, 522 (Fla. 4th DCA 2014).

A finding of direct criminal contempt by a juvenile is governed by Florida Rule of Juvenile Procedure 8.150. The trial court must follow six steps, two of which are:

> 2. The judgment of guilt shall include a recital of those facts upon which the adjudication of guilt is based.
>
> . . .
>
> 5. The judgment shall be signed by the judge and entered of record.

*J.A.H. v. State*, 20 So. 3d 425, 427 (Fla. 1st DCA 2009) (quoting *Fisher v. State*, 482 So. 2d 587, 588 (Fla. 1st DCA 1986)). Here, the court skipped steps two and five.

"The proper remedy for a trial court's failure to strictly adhere to the requirements of Rule 3.830 is a new hearing at which the rule will be followed." *Swain v. State*, 226 So. 3d 250, 252 (Fla. 4th DCA 2017). "Even technical errors, such as a failure to recite in the judgment those facts upon which the adjudication of guilt was based, require a reversal." *Fisher*, 482 So. 2d at 588; *see also J.A.H.*, 20 So. 3d at 428. Here, the error is in the lack of a written order.

For this reason, we reverse and remand the case to the trial court to enter the requisite written order.

*Affirmed in part; reversed in part; and remanded.*

CIKLIN and KLINGENSMITH, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***

4